KATE E. KIRBY, Defendant in Error, v. MANUFAC-
TURERS' COAL AND COKE COMPANY, Plain-
tiff in Error.

### Kansas City Court of Appeals, December 2, 1907.

1. **MINES AND MINING: Negligence: Placing Shots: Entries:
Statutory Construction.** To place a shot in a pillar between
parallel entries which is so thin that the shot, when exploded,
cannot safely perform the duty required of it is a violation of
sections 8823 and 8826, Revised Statutes 1899, and the operator
is liable for resulting damages under section 8820.

2. ————: ————: ————: ————: ————. **Master and
Servant.** Section 8826, supra, directing the placing of shots is
primarily directed to the miner; but where the pit boss must
know that a pillar where he has directed a shot to be placed is
too thin, the negligence is that of the master and not of the
servant, and the doctrine of fellow-servant does not apply to a
fellow servant of a miner injured by the explosion of the
shot.

3. ————: ————: ————: ————: ————: ————: **Con-
tributory Negligence.** While the statute requires a shot firer
not to fire dangerous shots but to condemn and report to the
mine foreman, it does not absolve the master from the care
imposed upon him by statute even as against the shot firer him-
self who is not supposed to assume that the master has violated
the law in running the entries and placing a shot in a dangerous
wall; and on the facts the question of contributory negligence
was for the jury.

4. ————: ————: ————: ————: ————: ————: ————:
**Assumption of Risk.** Where the plaintiff's case is founded on
the master's negligence and the evidence supports it, the doc-
trine of the assumption of risk can not apply since the servant
never assumes the risk of the master's negligence, and con-
tributory negligence is the only defence.

5. ————: ————: ————: ————: ————: ————: **Ven-
tilation.** Where the action is grounded on the fact that a shot
was put in a pillar which was unsafe therefor by its surfaces not
being kept parallel as required by the section relating to ven-
tilation, such latter fact will not defeat the action.

6. **TRIAL PRACTICE: Conferring With Witness Before Cross-
Examination.** The fact that the court permitted counsel before
cross-examining a witness to confer privately with him is not
necessarily an improper thing nor an abuse of the court's dis-
cretion.

Kirby v. Coal and Coke Co.

7. ————: Evidence: **Conclusions: Opinions.** Objection to the testimony on the ground of its being mere conclusions is not regarded meritorious, especially after the other side indulged in the same practice.

Error to Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Percy Werner* and *Campbell & Ellison* for plaintiff in error.

(1) The trial court erred in refusing peremptory instruction to find for defendant. This action is wholly a statutory one, and must stand or fall on proof of the violation by plaintiff in error, of one or more of the statutory provisions regulating the operation of mines in this State, resulting as a proximate result thereof in the death of the defendant's in error husband. (2) The only allegation of statuory violation as to which plaintiff attempted to introduce any evidence, was that cross entries 5 and 6 were not run parallel. The statute does not require that all entries in a mine shall be parallel with each other. (3) The object in having entries parallel, as shown by the statute itself, and by the evidence, is for purposes of ventilation. (4) No recovery can be had for the violation of a statute on account of an injury not intended to be prevented by the enactment of the statute. Barron v. Lead & Zinc Co., 172 Mo. 228; Barker v. Railroad, 91 Mo. 86; Lumaghi v. Voytilla, 101 Ill. App. 112; Bell v. Railroad, 72 Mo. 50; Dohlstrom v. Railroad, 96 Mo. 99. (5) Deceased lost his life as the result of one of the risks assumed by him as incident to his occupation as shot-firer, and involved in the discharge of the duties required of him by the statute providing for the employment of shot-firers. Livengood v. Lead & Zinc Co., 179 Mo. 229. (6) A shot-firer, who assumes to discharge the duties imposed by statute on such office, is presumed to bring

to the discharge of such duties, all of the knowledge, skill and experience requisite for the proper discharge thereof, and so far as his personal safety is concerned, he determines at his peril whether a shot which has been placed, drilled and charged by the miner, shall be fired by him, or condemned as too dangerous to fire, excepting only so far as his safety may depend upon matters known to the mine operator and not ascertainable by him in the proper discharge of his duties. (7) The statute of the State does not require that the pillars of coal, left standing between entries, shall be of any particlular thickness; and where entries are driven by coal being blasted from the face of such entries by shot-firers, and the shots are so placed as to allow the entries to converge instead of remaining parallel, the shot-firer must be held to know the conditions brought about by his own acts. (8) Deceased, under the uncontradicted evidence, was guilty of contributory negligence, first in firing the shot in question, instead of condemning and passing it; and second in taking up his position immediately behind the shot, before it exploded. Beaucoup Mining Co. v. Cooper, 12 Brad. (Ill. App.) 373-378. (9) The opinions of witnesses as to whether or not it was possible for Kirby, as a shot-firer, to have discovered the dangers of the shot in question, were incompetent. The statute imposed the duty on him of making such discovery, and he must be held to have possessed the necessary qualifications for his office. (10) After a party to a cause has completed the examination in chief of a witness, it does not lie within the discretion of the trial court to allow counsel for the opposing party to withdraw the witness from the witness stand, for the purpose of having a private interview with him, before proceeding to cross examine the witness. (11) Each of the instructions given on behalf of plaintiff was fatally erroneous.

*Higbee & Mills* for defendant in error.

(1)   There was no error in permitting plaintiff's counsel to confer with witness Phillips before the cross-examination.   The court is vested with a large discretion in the conduct of the trial; there is no suggestion of improper conduct on the part of plaintiff's counsel, who had had no opportunity to confer with the witness. 21 Ency. Pldg. & Prac., 974, 975.   (2)   The defense is that Kirby should have known the pillar was thin and that the shot would blow through the pillar.   In other words, that Kirby should have known what Shaw knew for two weeks and had not warned Kirby of.   There was a clear violation of defendant's common law duty to provide a reasonably safe place for Kirby to work, and of section 8802, Revised Statutes 1899, in suffering Kirby to enter upon his duties knowing, as defendant did, that the conditions were not safe for his work, and in not having the shot safely placed, drilled and charged. Poor v. Watson, 92 Mo. App. 89; Coal Co. v. Wells, 61 N. E. 236; Schmalstieg v. Coal Co., 59 L. R. A. 707.   In McKinnon v. Coal Co., 120 Mo. App. 148, it was expressly admitted that the mine did not generate gas. In drilling the entries without sights defendant departed from the beaten path and was guilty of negligence.   Spencer v. Brunner, 103 S. W. 578, 580.   But this did not require Kirby to quit work or inspect the pillar.   McKinnon v. Coal Co., supra. (3)   The proximate cause of Kirby's death "was a thin pillar of coal which could not resist the force of the explosion, and permitting a shot to be put in at a point where appellant was bound to know that it would blow through the entry (pillar), injuring any miner who might happen to be in the entry way near that point."   Kirby was not required to make inspection; his employer was. Eureka Block Coal Co. v. Wells, 61 N. E. 236, 238, 239. (4)   Sections 8802 and 8820, Revised Statutes 1899, were not intended to deprive the miner or shot-firer of

the remedies afforded him by the common law to require his employer to respond in damages for injuries resulting from the negligence of such employer in not providing him a safe place in which to work, but to throw around him greater protection and to increase, rather than decrease, the circumstances under which his employer shall be civilly liable for injuries sustained because of the negligence of such employer. Schmalstieg v. Coal Co., 65 Kans. 753; 59 L. R. A. 707; 4 Thompson on Negligence, secs. 4184, 4185, 4809; McDaniels v. Mining Co., 110 Mo. App. 706; Fulton v. Mining Co., 133 Fed. 193, 68 L. R. A. 168, 172, quoting Carterville Coal Co. v. Abbott, 181 Ill. 495, 502, 55 N. E. 134; Durant v. Mining Co., 97 Mo. 62. (5) Defendant was bound to know the dangerous condition of the mine. One effect of the statute is the erection of a legislative standard of duty or care, in addition to that imposed previously by the common law. A breach of one is as clearly a violation of the laborer's rights as would be a breach of the other. Andricus v. Coal Co., 90 S. W. 233, 235, 236, 28 Ky. Law 704; Bowerman v. Mining Co., 98 Mo. App. 317. (6) The negligence of the entrymen in allowing the entries to converge was the negligence of the defendant and was not attributable to deceased. If there was any negligence in the manner of drilling and charging the hole it had no causal connection with Kirby's death. There is no question of fellow servants in the case. Zellars v. Missouri Water, etc., Co., 92 Mo. App. 107; Root v. Railroad, 195 Mo. 348, 374; Coontz v. Railroad, 121 Mo. 652, 658, par. 3; Livengood v. Lead Co., 179 Mo. 229 (VALLIANT's dissenting opinion); 4 Thompson on Negligence, secs. 3874, 3950, 4924, 4925, p. 934; Jones v. Railroad, 178 Mo. 543; McDaniels v. Mining Co., 110 Mo. App. 712. (7) Kirby was entitled to notice that the pillar was thin where the shot was placed. He knew it was twenty-six feet thick at the last cross cut; notice of the re-

duction in its thickness was material to him. (8) Kirby assumed all risks and hazards ordinarily and necessarily incident to shot firing; but he did not assume hazards caused by the negligence or misconduct of defendant, or for its failure to see that the conditions in the mine were safe for Kirby's work. Chambers v. Chester, 172 Mo. 483-486; Coal Co. v. Wells, 61 N. E. 236, 237, and cases cited. Kirby had the right to assume that the pillar was heavy enough for the purpose of the shot, which was to knock off the coal into the fifth entry; that it had been constructed with such care, skill, and prudence as to make his work safe, and he was not required to inspect it or search for the purpose of discovering if it was dangerous for such purpose. Besides, the assumption of risk implies a knowledge and appreciation of the danger. Keegan v. Kavanaugh, 62 Mo. 230; Nickel v. Stock Co., 95 Mo. App. 226; Haworth v. Railroad, 94 Mo. App. 215; Kane v. Railroad, 112 Mo. App. 650. (9) The fact that the shot was placed in the pillar with Shaw's knowledge and approval was equivalent to a command to Kirby to fire it. He could only pass it in case he discovered it was too much in the tight, windy, or otherwise dangerous. The statute in this regard, is merely declaratory of the common law, that a servant must use ordinary care to avoid injury, and must not encounter obvious or glaring peril, and that is a question for the jury. Fogus v. Railroad, 50 Mo. App. 250.

ELLISON, J.—The defendant is a coal mining corporation who had in its employ one Joseph Kirby, who, while engaged in such employment, was killed by the blasting of coal in the mine. The plaintiff is his widow and brought the present action for damages resulting to her on account of his death. The judgment in the trial court was in her favor.

127 App—38

The defendant contends that the action can only be maintained under the provisions of article 2 of chapter 138 of the Miners' Statute of 1899 and amendments thereto. It furthermore insists that the petition is based on the statute. The trial court so interpreted the petition. We will therefore consider whether a case has been made out under the statute.

So far as is necessary to state the case as respects our conclusions, coal was being mined through entries or entry ways, and by drilling holes into the walls of coal and charging them with explosives and attaching fuses. The case shows that defendant's servants drilled and charged these holes and that other servants (called shot-firers) exploded them. The deceased in this case was one of the latter class of servants.

The mine in question was worked on the "room and pillar plan," and, as is provided by section 8823 of the statute, had two entry ways. These ways are required by this statute to be run parallel "for the egress and ingress of the air," and "cross-cuts must be made at intervals not to exceed fifty feet apart." The entry ways in question were designated as No. 5 and No. 6. The last cross-cut connecting them was fifty feet back of the place where the explosion occurred, and the distance between the two entries at the former point was about twenty-six feet. Instead of being run parallel as required by the statute, they were excavated in such way as to approach each other until, at the point of explosion, they were only about seven feet apart. At this point of explosion, about fifty feet from the last cross-cut, as just stated, one of defendant's servants, with the knowledge and approval of the pit boss, drilled a hole and charged it with explosive and fuse for the purpose of having it fired by the shot-firer. This hole was drilled diagonally into the wall of coal for several feet and ended within less than two feet from the wall on the opposite side in entry No. 6. At the proper time

the deceased, who was shot-firer in that entry, came along and lighted the fuse of that charge and then, for safety, quickly made his way around into entry No. 6 and down to about opposite the point where he had lighted the fuse. The explosion blew large quantities of coal and other substance with great force out into entry No. 6, and killed the deceased. It was shown that if the entry ways had been run parallel from the last cross-cut, that is to say, if they had not been cut out in such way as to approach each other, the wall dividing them would have been so thick at the point of explosion that entry No. 6 would not have felt it or been affected by it, and hence the deceased would have been unharmed. It was shown that the pit boss knew the entry ways had approached too close together. He knew that the wall or pillar dividing them was not more than seven or eight feet thick, where according to the testimony of the miner who drilled and charged the hole, the cross-cut was to be made. Aside from the testimony of that miner, the pit boss necessarily knew that a cross-cut would be made there as that was the proper distance from the last one, and he knew that blasting or firing would be done at that point. Some of the foregoing statement is drawn from the evidence offered by defendant; others parts of it from the evidence in behalf of plaintiff which, after the verdict, we accept as the fact.

The statute provides (section 8820) that "for any injury to persons or property occasioned by any violation of this article or failure to comply with any of its provisions, a right of action shall accrue to the party injured," etc. We have already stated that by the terms of section 8823, the entries should be run parallel and that a cross-cut connecting them should be cut every fifty feet. It is further provided (section 8826) that "all shots prepared by the miner for the extraction of coal from off of the solid, must be so placed, drilled and

charged, that the same, when fired, shall perform safely the duty required of such shots," etc.

The question then is, was the statute violated by the defendant? That section 8823 was violated, there is no room for question. So we think it equally clear that that part of section 8826 just quoted, was violated; for it was shown that the situation and surroundings at the point in question, made it manifestly an unsafe place in which to insert a blast or shot of explosive. It should be clear to any one that a heavy charge of powder of the character of the one here considered, with less than two feet of coal on the opposite wall, would blow out that wall.

Defendant insists that the violation was not by it and makes strong objection to plaintiff's instruction number one. It involves a construction of that portion of section 8826 reading as follows: "And all shots prepared by the miner for the extraction of coal from off of the solid, must be so placed, drilled and charged, that the same, when fired, shall perform safely the duty required of such shots," etc. The instruction asserted that this statute devolved such duty on the operator of the mine. Defendant insists that it is a duty imposed upon the miner, who is a fellow-servant with the firer, and if not performed by the miner, it is the neglect of a fellow-servant for which no liability attaches. The statute does not in terms state upon whom the duty is enjoined. It simply says certain specific things must be done without, in terms, saying who shall do them. But evidently its directions are addressed to the miner, for they concern things which, necessarily, the miner must do. Therefore in an action by a fellow-servant of such miner, the neglect of the miner is the neglect of a fellow servant and the master cannot be held. But, of course, if the action were by a stranger the neglect of the miner would be that of the master.

Notwithstanding the construction we thus place

upon this part of the statute, yet we believe that in view of undisputed facts, the instruction was not improper. Though we have already stated it in substance, its importance justifies us in repeating that the face of the case discloses that defendant's pit boss, whom we must look upon as the defendant itself, knew that the entries were so far from being parallel as to leave the wall dividing them at this point but seven or eight feet in thickness,—a space he knew to be too thin. He knew that a cross-cut must be made at this point and that shots or charges of explosives would be inserted in holes to be drilled in the wall. He knew, of course, that it was plaintiff's duty to fire the shots. The placing of a shot in such thin wall where it could not, in the language of the statute, "perform safely the duty required," being done with his knowledge and consent, was his negligence.

But still it may be said that it could be conceded to be the negligence of the pit boss (that is the operator of the mine), yet it was not statutory negligence, since the statute, as we have just said, was not addressed to the operator, and the action, being on the statute, ought to fail. But if the negligence in placing the shot is the direct or immediate act of the operator, then the statute applies to him; for the statute was intended to apply to whoever was directly responsible for placing the shot. If the master himself with his own hands was to drill the hole and insert the charge or shot, surely the statute would apply to him, for he would be the miner in that instance, for all practical purposes. When this work was being prosecuted, before and at the time of the death of deceased, it was under the order and direction of the pit boss. Though he knew that shots would be placed in the thin wall, to be fired, yet he directed the work to proceed. This was tantamount to placing the charge in the wall with his own hands, and he thereby

came within the terms of the statute as addressed to the miner.

But, as already intimated, defendant insists that deceased was guilty of contributory negligence under the terms of the statute itself. Section 8826, after reading as quoted above, proceeds: "but if the shot-firers find or discover that a drill hole is gripping too much or that it is drilled too much into (what the miners term) 'the tight,' and as may in the judgment of the shot-firers, prove a windy, blown out or otherwise dangerous shot, said shot-firers shall there and then condemn such shot as too dangerous to fire and pass the same without firing it. It shall also be the duty of the shot-firers to notify the mine foreman as soon as practicable, when a shot is condemned."

In our opinion that statute does not throw upon the shot-firer the entire responsibility for the safety of a charge or shot, as defendant insists. It was not intended to absolve the mine owner from the care and liability imposed upon him by the statute, even as against the shot-firer himself. These were imposed for the protection of the firer as well as his fellow miners. It would be a harsh view of the object of the statute to say that it meant the mine owner might be negligent with impunity and that it was the duty of the firer to seek for and discover such negligence and condemn and report it. It is true that the statute makes it the duty of the shot-firer to refuse to fire the shot if he "finds or discovers" it to be improper as described by the staute. But that is a command or direction to him which only imposes upon him the diligence, watchfulness and caution which would be exercised by an ordinarily prudent man performing such dangerous service. If he is thus alert in the performance of his duty and yet does not discover the negligence of the mine owner the statute does not deprive him of his action. In the performance of this duty the shot-firer is not compelled to assume that the

master has violated the law or neglected known obligations. This was the view taken by the trial court as is evidenced by the instructions given for plaintiff and those refused for defendant.

In other respects the facts were not such as to have justified the court in declaring deceased guilty of negligence, as a matter of law. In his situation he may well have failed to observe that the wall between the two entries had been allowed to grow dangerously thin or narrow. He worked with only a miner's small lamp attached to his cap. It was not his duty to aid in the running of the entries, nor to direct their course; and while section 8823 in directing that the entries should be run parallel was for the purpose of proper ventilation, and so the jury was instructed, yet, in judging of the safety of the shot deceased could well rely upon defendant's lawful performance of its duties, which, if substantially performed in this instance, would have left the wall between the two entries so thick that no possible danger would have existed in firing the shot which killed deceased. That the case, as a whole, made the question of contributory negligence one for the jury, we entertain no doubt. It was not such a case on the evidence as would have justified the court in declaring that there was contributory negligence as a matter of law.

In view of the ground upon which plaintiff places her case and the evidence relied upon to support it, there is no room for application of the doctrine of assumption of risk. The case proven is one of negligence on the part of the master and the only defense applicable is that of contributory negligence. A servant may be guilty of contributory negligence in performing service with knowledge of the master's negligence, but in that case the principle of law as to assuming the risk does not apply. "The servant never assumes the risk of the master's negligence." [Curtis v. McNair, 173 Mo. 270;

Bailey's Personal Injuries, sec. 463.]   He assumes the risks that are "ordinarily and necessarily incident to the business, but, on the other hand, he does not assume and agree to bear all the extraordinary and unusual risks that might be caused by the misconduct and negligence of the master."   [Chambers v. Chester, 172 Mo. 461, 483; Eureka Coal Co. v. Wells, 62 N. E. 236.]

Defendant says that though the statute was violated, yet no recovery can be had for the "violation of a statute on account of an injury not intended to be prevented by the enactment of the statute."   The point is made to bear upon section 8823, directing that entries shall be run parallel for the purpose of ventilation; and as the death in this case was not occasioned by any lack of proper ventilation, no recovery can be had for a violation of that statute.   But, in our view, the action is not based on a violation of that statute.   The action is grounded on the fact that the shot was put in a wall which was unsafe for such shot and was made unsafe by not paralleling the entries as provided by the statute.   So, though the unsafe place was made by a failure to observe the law as to entries, it was placing the shot in such unsafe place where it could not "perform safely the duty required of such shots" that was the cause of the death.

After defendant had concluded the examination in chief of one of its witnesses, counsel for plaintiff was permitted by the court to confer privately with the witness before beginning the cross-examination. While this was somewhat out of the ordinary course, yet we must concede that it was not necessarily an improper thing to do. And since it was permitted by the trial court we know that in his judgment the circumstances were such as to justify it. It was not a case of abuse of that discretion which must be allowed to courts in directing the course of trials.

We do not regard objections to evidence in plain-

tiff's behalf on the ground as being mere conclusions of witnesses, as meritorious. Besides, the same line of questioning was indulged in by defendant. There is nothing in these objections to justify a reversal of the cause.

What we have written disposes of the principal objections made to the trial. We have examined other points made and do not find that they are of sufficient moment to reverse the judgment, and it is therefore affirmed. All concur.