GEORGE TIMMERMANN v. ST. LOUIS ARCHITECTURAL IRON COMPANY, Appellant.—1 S. W. (2d) 791.

Division One, December 7, 1927.

*D'Arcy & Neun, Frank A. Habig* and *John P. Leahy* for appellant.

424

*Mark D. Eagleton* and *Hensley, Allen & Marsalek* for respondent.

LINDSAY, C.—This is an action to recover damages for personal injuries sustained by the plaintiff, alleged to have been caused by the negligence of defendant. The plaintiff was a structural iron worker, and at the time of his injury was engaged in connecting an iron beam to the top ends of two upright iron beams, or columns, in the construction of a building, spoken of as the Irene Building, in the city of St. Louis. The two columns were about twelve feet in height. The beam resting on the top of them was fourteen or fifteen feet long, and was described as a ten-inch beam, the flanges of which were five or six inches wide. It was to be bolted to the top ends of the upright columns. At the time in question the plaintiff sat upon one end of the beam, and was making the connection with the column under that end. It was alleged, and the evidence tended to show, that it was the custom to brace the column by pieces of plank or timber, made fast at the ground and adjusted against the column, to hold it upright, while this sort of work was being done; and it appears also that the materials for such braces were available. In this instance no braces were set to hold the column in upright position, but one Arthur Zeis, who was directing the work, was holding the column at the upper end of which the plaintiff was at work, for the purpose of keeping it steady in upright position. Plaintiff testified that he asked whether the column would be braced, and Zeis said he would hold it. While so engaged, something happened to a derrick, also in use in the building, and Zeis let go of the column, and went over to the derrick, which was about fifty feet away, and at this time the column fell over, carrying with it the beam on which the plaintiff sat, resulting in his injury.

The defendant was engaged in the business of fabricating and installing structural iron work used in the erection of buildings. One Wm. C. Bartels was the contractor for the erection of the Irene Building, and had sublet to defendant the contract for furnishing the materials, and doing the work, called for as iron work, and required in the erection of that building. It was and is plaintiff's contention that Zeis, in directing the work being done by the plaintiff, was employed by defendant as a foreman. Defendant's contention is that Zeis undertook to do the work of installation of the structural iron, as an independent contractor, and that plaintiff was employed

428

by Zeis. These respective claims constitute the most sharply con-
tested issue in the case, and enter into several of the numerous as-
signments of error, including the claim that it was error to refuse
defendant's demurrer to the evidence.

Before a statement of the evidence on that subject, a reference to
the pleadings, and some questions raised thereon, may properly be
made. It is urged that the amended petition, on which the case was
tried, fails to state facts sufficient to constitute a cause of action.
That objection was not raised by demurrer, or in any man-
ner, until after verdict, by defendant's motion in arrest of
judgment. The objections are stated at some length, and to some
extent there is intermingled with them the claim that the evidence
did not show negligence on the part of defendant; but the substance
of the claim of counsel is, that the petition pleads conclusions only,
and not facts constituting a cause of action. The petition is not all
that could be desired. It alleges that plaintiff while engaged in the
line and scope of his employment for defendant, was injured through
the negligence of defendant in the particulars following. Then fol-
low five paragraphs devoted to the statement of negligence on the
part of defendant. The first paragraph charges negligence, in that,
defendant "ordered and required plaintiff to sit upon a large hor-
izontal beam when defendant knew, or could have known, that said
beam was not braced, or supported, and by reason thereof was likely
to tilt and fall and injure plaintiff." In the second paragraph the
pleader, somewhat less reticent, alleges a failure to furnish plaintiff
a safe place in which to work, in that, he was required to work on a
horizontal beam, resting upon two perpendicular beams, when de-
fendant knew or by the exercise of ordinary care, could have known
that said beams were not braced, or supported or secured, and by
reason thereof were likely to fall and injure plaintiff. The third
paragraph alleged that defendant knew, or could have known, of a
general custom prevailing in St. Louis, and vicinity, at the time,
and prior thereto, to brace said beams by means of supports and
braces leading from said beams to the ground, to prevent said beams
from shifting or moving while in the course of construction, and
wholly disregarded its duty in that respect, and failed to brace said
beams. The fourth paragraph alleges that in the absence of braces
to secure the beams, defendant caused one of its employees to hold
one of the beams, and assured plaintiff he would continue to hold
the same, and that it would be reasonably safe for plaintiff to con-
tinue to work on said horizontal beam and caused plaintiff to rely
upon that assurance, and that notwithstanding, said employee, who
was in charge and control of the work, negligently released the
perpendicular beam and failed to hold the same, and failed to warn
plaintiff thereof, and as a consequence thereof negligently left said

beams "wholly unsupported, unbraced and unsecured." The fifth paragraph merely alleged failure to warn plaintiff of the fact that the beams were not braced or secured, or of the danger of their falling. The specifications of the existence of the custom to brace the beams, and of the holding, and then letting go of the column, were not submitted to the jury.

An objection to the sufficiency of the petition, coming after verdict, although permitted to be made, is not viewed with favor, and is not to be sustained, "if by reasonable intendment, or by fair implication from the facts stated, or if by most liberal construction, the essential allegation may be got at by inference." [Ice & Storage Co. v. Kuhlmann, 238 Mo. 1. c. 702 and cases thereafter cited.] While the petition is subject somewhat to criticism for meagerness of statement, yet, taking the allegations together, there is the statement the defendant negligently failed to furnish plaintiff a safe place within which to work, and that plaintiff was required to work upon a large horizontal beam supported by two perpendicular beams, and that defendant failed to brace the perpendicular beams by braces leading from them to the ground, to prevent their shifting or moving, and that by reason of the failure to brace, said beams were likely to tilt and fall and injure plaintiff. There is enough stated to fairly distinguish this petition from the petitions in the cases relied on by counsel for defendant. In Kramer v. K. C. Light & Power Co., 279 S. W. 43, the charge upon which the ruling went, was, that the defendant "negligently caused said step to be driven and placed in said pole not far enough to make it reasonably safe." There was in that case an omission to state any fact, showing how far the step was required to be driven into the pole, to make it safe, and the allegation that it was not driven far enough, was said to be the statement of a legal conclusion, and not the tender of an issue of fact. In the instant case the allegations made, go farther, to show and to mean that it was necessary to brace the columns to prevent their falling, and that defendant did not brace them at all. In Sabol v. Cooperage Co., 313 Mo. 527, the allegation was that the "pile of material" (barrel staves) which fell upon plaintiff, was "insecure, so that there was probable danger of it falling." In Hopkins v. American Car & Foundry Company, 295 S. W. (Mo. App.) 841, the allegation was merely that a pile of steel bars was "piled in an insecure manner."

As to the petition, there is also the further complaint that after statement of each of the paragraphs mentioned, specifying negligence, there is not after each an allegation that as the direct and proximate result thereof the plaintiff was injured, but, there is only, after all of them, the allegation that "as a direct and proximate result of the aforesaid negligence," the plaintiff, while so placed and at work was injured; and it is argued that this statement is merely

an attempted "catch-all;" does not apply to each of the several specifications of negligence; and that such a statement should have been made serially after each of said specifications. This was not necessary. The allegation which immediately preceded the five specifications, and the allegation which followed, referred to and included all five specifications, and pleaded all of them as causal acts of negligence. The objection is without merit, and is overruled.

Coming to the chief contention, that the peremptory instruction should have been given, we do not find the claim made that plaintiff's employer, whoever he was, Zeis or defendant, was not negligent. It is suggested, somewhat vaguely, that it was contributory negligence on the part of plaintiff to work on the horizontal beam obviously dangerous as it was, when the upright beams were not braced. The plaintiff testified that before the accident he suggested the bracing of the beam and that Zeis said he would hold it. The case was tried upon the amended petition of plaintiff, to which reference has been made, and the general denial in defendant's answer. The defendant in the second part of its answer, as filed, undertook to plead contributory negligence, but merely stated a conclusion. This part of the answer was demurred to by the plaintiff; the demurrer was sustained; defendant did not offer to amend its answer, and stood upon its general denial.

If it must be said, as a matter of law, under the evidence, that Zeis was not employed by defendant as a foreman, but was an independent contractor, then plaintiff made no case against defendant, and the demurrer to the evidence should have been sustained. The evidence upon that issue is to be considered. The plaintiff introduced defendant's written proposal, made to Bartel, the contractor, to furnish the materials and to install the iron work called for in the plans for the building, and the acceptance of its bid by Bartel. This was dated January 25, 1923. Plaintiff's injury occurred on the third day of May, 1923. The plaintiff and Zeis were both members of the Iron Workers' Union. The plaintiff said that on the third of May he was working for defendant, Architectural Iron Company, and that Zeis was on the job directing the work; that he had known Zeis four or five years, and began working with him about March 1, 1923, and from that time worked with Zeis until the time of his injury, except for two or three days; that in the course of this time he had worked under Zeis on several jobs, some in St. Louis, and others in neighboring towns, and in all of them got all of his orders and directions from Zeis; that every Saturday he received his pay from Zeis in an envelope, which had his name on it; that he did not know where certain equipment used in the work by Zeis came from. He testified as to the circumstances under which he began to work with Zeis—that the secretary of the union notified him a worker was wanted, on the

job at which Zeis was then at work, and he went and began to work with Zeis.

Zeis testified that at the time of the accident he was employed by the St. Louis Architectural Iron Company, as foreman, in the construction of iron work in the Irene Building; that he received from that company a salary or wage of $1.50 an hour; that he had known the people, the St. Louis Architectural Iron Company, for a long time; and for twelve years or more had been employed by them to go out and take care of these jobs for them; that he also worked in the same capacity for one or more other concerns, and was paid on an hourly basis for the time he put on the respective jobs. The Victor Iron Works was another company mentioned in this connection. Zeis said in this work, the money to pay the men was sent to him from the office of defendant, and he paid them; that on Friday evening or Saturday morning he would call up, giving the amount of time that was in for the week, and that he did so on the Irene Building job; that on this he received a salary of $1.50 an hour. The evidence tends to show that Zeis was frequently engaged at the same time on several jobs for the defendant, or, for defendant and Victor Iron Works; that if he put in two or more hours on a job of defendant on a certain day, he would receive pay for those hours from defendant, and if he put in two or more hours time on such a day for the Victor Iron Works, he would receive his pay for that time from the Victor Iron Works. His testimony, and to some extent the testimony for defendant, tended to show that Zeis kept his own time, and the time of the men simultaneously engaged on various jobs, going forward for defendant; and that the amount of money called for by him at the end of the week was made up of the sums of the time of the men on each job, his request or report showing the amounts severally attributable to each job then on hand. Zeis, on his cross-examination, testified that on these jobs he often, but not always, gave defendant an estimate of what the job would cost, that is, the cost of installation. He said Mr. Simon, defendant's president, would tell him the amount of tonnage in a given job, and he would make an estimate in his mind, or give an opinion as to what it would cost; that on most of these jobs, and on the Irene Building, the method was to give defendant an estimate of the amount of cost. He said that if the job, when completed, cost less than the amount of the estimate, he was given the difference between the estimate and the actual cost, as a bonus; and if the cost was more than the estimate, the defendant paid the actual cost. It seems clear that Zeis in giving his estimate or opinion as to cost of installation, included his own wages at $1.50 an hour, and that always he received the amount of the sum of his wages, and frequently more. He testified that defendant furnished him with a time book, in which to keep the time, so that defendant could enter

it on their books, and that he so proceeded on the Irene Building job. The evidence is to the effect that Zeis was engaged in all the structural-iron-work jobs defendant had during a long period of years, except in one or two instances. Defendant's secretary, Emery Paul Simon, testified that Zeis was not employed as foreman for installing iron work on the various iron work jobs they had, but that Zeis, being told the amount of tonnage in a job, would set his price for installing it, and that if the price did not suit they would give it to someone else. He mentioned, however, only one building given to another during the period of years mentioned. This witness identified a book kept by defendant as a record of each and every employee of the concern. It was said to contain a list of twenty employees, in each and all of the departments of the company, the number of hours put in; and he said that the amount for each man was totaled into a lump sum each week. It appears from his testimony that the name of Zeis was on that list, but it did not include the name of plaintiff or others. The witness also testified that it was the practice of Zeis to call up near the end of the week to say how much money he wanted, on each of the several jobs on which he was engaged, during that week, and the book was kept to show, as the witness explained, that the sum paid Zeis at the end of a certain week was made up of the several sums, each referring to the amount called for by Zeis upon a particular job. Asked as to whether, when the cost exceeded the estimate, the excess was paid by defendant company, the witness testified that in about two instances the cost of installing the iron work exceeded the estimate made by the company and by Zeis, and that on these occasions the defendant company paid the excess—and he added that Zeis said "he would not finish the work unless we gave him what he wanted." Zeis, on his examination in rebuttal, produced a time book, which he said had been given to him by defendant. He said such a book was given him every year. The book he produced, he said, was a book intended for the year 1917, and was given him for the year 1923, because the secretary had no books bearing date of the last named year. The account of the book in question began in January, 1923, and ran to May 11, 1923, giving names of various employees and the hours they worked, including the plaintiff Timmermann. Zeis testified that he gave the books covering the period between 1917 and 1923 to defendant's bookkeeper; that his own name appeared as an employee on these books, and also during the weeks of 1923. There was a good deal of examination and cross-examination of witnesses, including the president and secretary of the defendant company, and others, to bring out the fact that defendant had given notice of Timmermann's accident to the New Amsterdam Casualty Company, a company in which defendant carried a policy of insurance; and that in the notice, Zeis was men-

tioned as a foreman; that the notice was given too late under the terms of the policy, but that the Casualty Company, under a reservation of right, undertook to defend or assist in defending the suit brought by Timmermann against defendant, and that its attorney was entered as associate counsel for defendant, and was conducting the trial for defendant. The report to the Casualty Company was not produced, nor did defendant's officials admit that Zeis was mentioned therein as foreman, nor expressly admit their making a report. The officers of defendant apparently could not remember much upon this subject, and were indefinite as to making claim to the Casualty Company, or what the claim contained. It appears that Mr. Sluggett, attorney for the Casualty Company, was in charge of the defense of this case, in its early stages; and later, Mr. Moser was engaged by Mr. Sluggett. The plaintiff also testified that prior to the time he filed suit or engaged an attorney, he was examined by a physician, and permitted X-ray pictures to be taken, upon request of Mr. Sluggett, the attorney for the Casualty Company. In his testimony in rebuttal, the plaintiff testified to an occasion when he had a conversation with the secretary of defendant company, concerning the work on one of the jobs, spoken of as the Taylor Avenue job, and the manner of doing it, and to the effect that Mr. Simon decided upon how the work should be done, on that particular occasion, and that it was done as he directed.

Under the contention that Zeis was an independent contractor, citation is made to numerous cases. [Gayle v. Missouri Car & Foundry Co., 177 Mo. 427; Fink v. Missouri Furnace Co., 82 Mo. 276; Lancaster v. Conn. Mutual Life Ins. Co., 92 Mo. 460; Long v. Moon, 107 Mo. 334.] In the opinion in Gayle v. Missouri Car & Foundry Co., at page 446, there is set out the test for the determination of the question as follows: "The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his sub-contractor, or his servants, committed in the prosecution of such work. An independent contractor is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." In this and in all the cases involving this question there is recognized the difficulty often found of determining in the given case whether a person is an agent or employee, and when a principal. In them, ordinarily, the question was determined upon a consideration of all the facts and circumstances attending the transaction, and the conclusion could be reached, only after weighing all

the circumstances. If the facts in the given case are indisputed, the court may determine, as a matter of law, that the relation of independent contractor exists; but where the facts are disputed the proper course is to leave the question to the jury under proper instructions. In 31 Corpus Juris, page 474, it is said: "Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact."

In the instant case, the facts bearing upon the question are not undisputed. There is conflict in the testimony as to the relation between defendant and Zeis and as to the circumstances from which the relation is to be inferred. In the state of the evidence, we cannot say, as a matter of law, that Zeis was an independent contractor. The manner in which he did this work for defendant, and the basis upon which he was paid as set forth in his testimony and in the testimony of defendant's officers, is by no means conclusive that he was an independent contractor. The inference that Zeis was an independent contractor and not an employee, does not necessarily arise under that testimony, for he could have been an employee of defendant whose wages were fixed, in the manner testified to by him, and in some measure supported by the admission of defendant's officers. The question was one for the jury under proper instructions.

Error is assigned upon the admission of certain testimony given for plaintiff. On his direct examination the plaintiff was asked to state "who he was working for on May 3, 1923." Objection was made and overruled, and he answered that he was working for defendant, St. Louis Architectural Company. In a similar manner Zeis in his direct examination was asked by whom he was employed on the date mentioned; and he, over objections, answered that he was employed by defendant. The objection assigned is that the statement of each was a mere conclusion of the witness upon a contested issue. The general rule is that witnesses must state facts, not conclusions or opinions, except in those cases where experts are allowed to state opinions. However, in this case, the same method of examination was pursued by defendant. Each of the two officers of defendant testified in like fashion, stating it as a conclusion that Zeis was not an employee of defendant. Thereafter, in the examination of each of these on both sides, the testimony on the question of the relation borne by Zeis to the defendant, took a wide range, covering, as has been indicated, not only the time of, and the installation of, the iron work in the Irene Building, but generally, over a period of years, including facts and circumstances connected with many jobs specifically mentioned. Under the testimony, the jury had before them a lengthy history of the conditions under which Zeis and defendant acted.

Emory Simon, defendant's secretary, in the course of cross-examination testified: "Q. As a matter of fact, you considered Zeis a very trustworthy employee, didn't you? A. I did." Immediately thereafter he said he was anxious to have Zeis do the work, whether foreman or not. He said he never told Bartels the work was let to Zeis, and that when Bartels wrote defendant a letter urging that the work be hurried, he told Zeis to hurry it.

In view of all the foregoing, we hold there was not such error as demands a reversal of this case for the sole reason that plaintiff and Zeis were permitted in the early part of their examination to make the general statements referred to. [Price v. Barnes, 300 Mo. 233; Tranbarger v. Railroad, 250 Mo. 59; Cusack Co. v. Lubrite Co., 261 S. W. 729; Johnson v. Construction Co., 188 Mo. App. 122; Deere Plow Co. v. Sullivan, 158 Mo. 455; Montgomery v. S. W. Ry. Co., 198 Mo. App. 17; Kirby v. Coal Co., 127 Mo. App. 600.]

Complaint is made of plaintiff's Instruction 1, covering the case, and authorizing a recovery. This instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that on the 10th day of May, 1923, plaintiff was in the employ of defendant and that while engaged within the line and scope of his employment for said defendant, if you do so find, a horizontal beam on which plaintiff was sitting did tilt and move forward, causing the plaintiff to move therewith and to fall to the ground and to be injured thereby; and if you further find that at and prior to the time when the beam fell as aforesaid, if you do so find, same was not braced, or supported or secured, and that by reason thereof plaintiff's place of work was unsafe and dangerous and not reasonably safe; and if you further find that the defendant knew, or by the exercise of ordinary care on its part could have known of the fact, if you find it to be a fact, that said beam was not braced, supported or secured, as aforesaid, if you do so find, and that in furnishing said place of work under the circumstances aforesaid, if you do so find, the defendant failed to exercise ordinary care and was guilty of negligence, and that the aforesaid beam was caused to tilt and move forward and plaintiff was caused to fall therewith by reason of the aforesaid negligence on the part of defendant (if you find defendant was guilty of negligence in failing to brace, support or secure said beam), then your verdict must be in favor of the plaintiff and against the defendant."

The instruction submits the charge of failure to provide a safe place to work as embodied in paragraph 2 of the specifications of negligence and failure to brace the beam. It does not submit the question of the existence of a custom to brace the beams, or the question of the holding of the beam by Zeis and his letting go of it. These omissions, and

some other matters, are included in the objection made. Defendant's objections are stated at considerable length. The first has reference to the petition and to what is termed by counsel the "catchall" allegation. Sufficient reference to that has been made. The substance of the chief objection is, the failure to submit the question of existence of a custom to brace the beams,- and omission of the question of assurance by Zeis that he would hold the beam, and his letting go of it. It is urged that thereby there is omission to submit hypothetical facts necessary to be found to authorize recovery.

It is not necessary in these cases that the plaintiff shall submit all the specified acts of negligence charged. It is enough if those submitted are within the allegations of the petition, are supported by substantial evidence, and are of such character that liability on the part of the defendant may be predicated thereon. [Gannon v. Gas Co., 145 Mo. 511; Meeker v. Union E. L. & P. Co., 216 S. W. 923; State ex rel. v. Ellison, 223 S. W. 671; Spaulding v. Street Ry. Co., 129 Mo. App. 607.]

The failure to submit the question of existence of a custom to brace the beam, was not a fatal infirmity for still another reason. The existence of the custom was not a substantive part of plaintiff's cause of action. In the opinion in the very recently decided case of Hogan v. Fleming, 297 S. W. 1. c. 408, it was said: "It has been ruled in this State that, inasmuch as custom is not substantive in character, but merely evidentiary of defendant's negligence, it is not necessary that such custom shall be pleaded."

Numerous cases are cited supporting that utterance, among them Brunke v. Telephone Co., 115 Mo. App. 36; Caldwell v. Payne, 246 S. W. 312; Gordon v. Railway, 222 Mo. 536; Cassin v. Lusk, 277 Mo. 678. The custom as indicative of the conduct of prudent men, was probative in character, but it did not supplant or change the rule of negligence established by substantive law. It was not necessary that it be submitted as a hypothetical fact.

Next is the failure to submit the question of Zeis holding the beam, and then letting go of it. The failure to submit these acts did not make the instruction erroneous, since the acts of negligence which were hypothesized, constituted a ground of recovery. The fact that Zeis, in the absence of braces, held the beam and then let go of it was not contradictory of the facts hypothesized. The instruction submitted the case upon the theory that the negligence was the failure of defendant, the master, to brace the beam at all, and that such failure was the proximate cause of the injury. That was a sufficient basis of right to recover. [Bender v. Kroger Grocery Co., 310 Mo. 488; Enloe v. Car Co., 240 Mo. 443; Koerner v. St. Louis Car Co., 209 Mo. 141.] The duty of defendant to furnish plaintiff a reasonably safe place in which to work was a continuing and non-delegable

duty, and a submission of the question of negligence of the defendant, in failing to do so, was enough. If defendant had a theory of defense based upon the acts of Zeis in holding and then letting go of the beam, it was incumbent upon defendant to ask an instruction thereon.

An additional observation may be made. That Zeis was directing the work being done by plaintiff, is not in dispute. The dispute is as to the relation under which he was doing so. Plaintiff's theory and evidence was, that Zeis was directing the work as an employee, and foreman of defendant. Defendant's theory is that Zeis was an independent contractor, and as such was directing the work. That theory was submitted under defendant's Instruction 4, and resolved against defendant. The question whether plaintiff was an employee of defendant was submitted by Instruction 1, and also by defendant's Instruction 3, and that also was settled against defendant. Under those findings it follows, inevitably, that plaintiff as such employee, was being directed by Zeis who stood as defendant's vice-principal; negligence of Zeis, was negligence of defendant, and a failure to discharge a continuing and non-delegable duty to provide plaintiff a reasonably safe place in which to work.

Another objection to the instruction is, that there was a failure to make sufficient requirement of finding that plaintiff was employed by defendant, or was required by defendant to work where he did. The finding required was, that the plaintiff "was in the employ of defendant" and in "the line and scope of his employment was sitting" on the beam. The instruction could have been better framed, but upon the matter under immediate consideration we do not think it could have been misunderstood by the jury. Upon the contention that the instruction did not sufficiently submit the question whether plaintiff was employed by defendant, a reference to defendant's Instructions 3 and 4 is pertinent. They are as follows:

"The court instructs you that if you find and believe from the evidence that at the time plaintiff was injured he was not in the employ of the defendant, then your verdict must be in favor of defendant and against plaintiff.

"The court instructs the jury that if you find and believe from the evidence that the defendant contracted with the witness, Arthur Zeis, to erect the steel work in the building mentioned in evidence, and that said Arthur Zeis was to proceed with said work according to his own methods and without being subject to defendant's control except as to the result of his work, and that plaintiff was in the employ of Arthur Zeis at the time of his alleged injuries, and at said time not in the employ of defendant, then your verdict must be in favor of defendant."

438

Under these it is seen that by Instruction 3 defendant would have disposed of the case by a verdict for defendant, using only the issue whether the plaintiff was an employee of defendant, and stating that issue in language substantially the same as that used in plaintiff's instruction. But, by Instruction 4, the defendant hypothesized facts which, if found, would have constituted Zeis an independent contractor, and plaintiff an employee of Zeis, and again directed a verdict for defendant upon the finding of such facts; so that, if plaintiff's instruction was general upon the question of his employment by defendant, defendant cannot well complain since his Instruction 3 was merely the converse of plaintiff's instruction on that point, and by his Instruction 4 he hypothesized the facts desired by defendant to be included, as constituting Zeis an independent contractor, and said Instruction 4 is not inconsistent with either of the others. Plaintiff's instruction, in the respect under consideration is much like the instruction sustained in Vaughn v. Davis, 221 S. W. 782. See also Llywelyn v. Lowe, 239 S. W. (Mo. App.) 539, and cases there cited.

It is further urged here on behalf of defendant, that the verdict is against the weight of the evidence, and is the result of prejudice and passion. We are not authorized to weigh the evidence further than to determine that there was evidence for the plaintiff warranting submission of the cause; nor, do we find in the record such occurrence or incidents connected with the trial, as warrant us in saying that the verdict was the result of prejudice and passion. These objections were presented to the trial court in the motion for a new trial, and overruled and we find no good reason for convicting the trial court of error therein.

It is urged finally that the verdict, which was for $15,000, is excessive. At the time of his injury, the plaintiff was 38 years of age, and in good health. His testimony was that when the beam came down, he came with it and that it was of iron, and heavy; that he threw his left leg over it to get down on the ground; that he alighted on his heels, and came down on his chest; got on his knees and tried to get up and fell forward, and could not get up; was taken home and remained in bed twenty-three days and then began to sit up in a chair. He was treated at the Washington University Dispensary and at Barnes Hospital, by a specialist in orthopedic surgery. The most serious injury was to his right foot. The specialist testified that the X-ray showed an impacted fracture of the oscalcis, the bone forming the heel; that the fragments of the bone were "jagged together" and that a support was tried in the way of strapping, and braces under the arch, with packing and massage, but the condition did not improve, and the foot was opened and the relation of the bones made as equal as possible. The excess of callus was cut away, and the foot put in a plas-

ter cast, which had to be removed a little earlier than usual, on account of skin infection developing underneath the cast.

He and plaintiff testified that plaintiff had made 45 trips to him for treatment. Another physician, who examined the plaintiff a short time before the trial, which was eighteen months after the occurrence of the injury, testified that plaintiff's right ankle joint was stiff, and limited almost 100 per cent in the to-and-fro movement; that the muscles between the ankle and knee were atrophied; that the arch of the left foot was breaking down, and the left ankle in a condition of strain because of the plaintiff's unnatural method of walking, due to the injury to the right foot; that the condition of defendant's foot would probably grow worse; that the condition of the stiffness was permanent; that plaintiff could not climb or do structural work. Plaintiff testified that he suffered constant pain in his foot; that he could not climb or lift; that in going up or down stairs and especially down, he had to support himself by holding on to things; that during the eighteen months since his injury he had done altogether only twenty-five days of odd jobs of work, here and there; that he had constant pain, and every night, in order to relieve somewhat the pain, he had to bathe his feet in hot water and then in ice water, and rub them with alcohol.

The testimony of the physicians tended to show also that from the nature of the injury and condition, plaintiff would continue to suffer pain. The plaintiff at the time of his injury was earning wages of $12 per day. In support of the contention that the verdict is excessive, counsel for defendant have cited Mahmet v. American Radiator Co., 294 S. W. 1015, wherein a verdict for $15,000 was reduced by a *remittitur* to $10,000 in trial court, and upon appeal reduced by this court to $7500. The injury to the plaintiff in that case was that his right hand and fingers were, by the injury, left so crooked, drawn and contracted that he could not grip anything, or do any work with them. In that case, the plaintiff was earning about $31 per week at the time he was injured. In the case of this plaintiff, his steady employment earned more than twice that sum, and the testimony showed steady employment for some time prior to his injury. It is plain from the testimony that he is wholly incapacitated for labor of the kind in which he was employed, and at a great disadvantage for most other kinds of labor; will be compelled to walk in a crippled and unnatural manner, and probably will suffer pain throughout his life.

Under the circumstances, and considering that the jury had an opportunity to observe the plaintiff personally, we cannot find that the verdict is so excessive as to show that the jury acted against the rules of law, or from passion and prejudice, and conclude that we cannot substitute our opinion for that of the jury in this case. It

results therefore that the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.