WILLIAM CUNNINGHAM, RESPONDENT, v. JOSEPH F. HOLZMARK ET AL., APPELLANTS.*—37 S. W. (2d) 956.

Kansas City Court of Appeals.   January 5, 1931.

*Daniel L. Brenner* and *Borders, Borders & Warrick* for respondent.

*Myer M. Rich* and *Isadore Rich* for appellants.

BLAND, J.—This is a suit for breach of contract to procure theft insurance on plaintiff's automobile. There was a verdict and judgment in favor of plaintiff in the sum of $800. Defendants have appealed.

The facts show that defendants are partners engaged in the selling of automobiles in Kansas City; that Mr. Fox, a salesman of defendants came to plaintiff's home and solicited him to purchase an automobile from defendants; that on May 2, 1926, plaintiff, at his home, signed an order in blank for the purchase of such an automobile; that the order contained printed stipulations in reference to the sale of an automobile which stipulations were so drawn as to apply to the sale of any automobile, and not a specific car, the blank spaces being for the insertion of specific terms covering a sale of a car. The plaintiff had an Essex automobile which he desired to thade in on a new car, which it was proposed he purchase from the defendants, but he had not at the time he signed the order selected the particular type of car he was to purchase. The amount that hs was to be allowed for his car was not agreed upon, nor were the terms of the contract.

On May 27, 1926, plaintiff went to the place of business of defendants and there consummated with the defendant, Irwin Holzmark, the purchase of a new Overland automobile from them. At this time plaintiff selected the type of car he desired, agreed to the amount of the allowance which was then offered to him for his Essex car, and executed a note and chattel mortgage to secure the same on the new automobile. The purchase price of the new car was $1207. Plaintiff received an allowance of $500 on his Essex car and with handling and insurance charges included there was a balance of $799.30 agreed as being due from plaintiff upon the new car. This was the amount of the note which plaintiff signed. The

764

note was an installment note payable monthly, the first installment to become due on the 15th day of July, 1926, and the last on June 15, 1927. In agreeing upon the terms of the sale plaintiff asked said Holzmark, "how about insurance." The latter replied, "you are fully protected on insurance for the life of your paper." Plaintiff testified that "was the understanding we had."

The note and chattel mortgage were made payable to defendants who indorsed the note "with recourse" and delivered it and the mortgage to the Automobile Finance Company, the purchaser thereof. As before stated, the first installment was to become due on July 15, 1926, but on May 29 of that year, plaintiff received a notice from the Automobile Finance Company advising him that his first payment was to become due on the 27th day of June, 1926, and that plaintiff's note included payment for fire and theft insurance for one year. Upon receipt of this notice plaintiff called the defendant, Irwin Holzmark, and advised him that the notice was not in accordance with the agreement with reference to the date upon which the payments on the note were to become due, or, as to the duration of the fire and theft insurance. Said Holzmark told him "to pay no attention to the notice, to tear it up and pay my payments as agreed and he would take care of it." Plaintiff made payments on the note in accordance with his agreement with Irwin Holzmark and, on June 4, 1927, the automobile was stolen and never recovered. At this time there was one payment, due June 15, 1927, unmade upon the note. The payment of this last installment was never demanded by the finance company of defendant, nor by defendants of the plaintiff. After the theft of the automobile it was discovered that, instead of the car being insured against fire and theft for the life of the note, the insurance had been procured by the finance company and that it ran for only one year, expiring before the theft of the automobile.

The testimony of the defendants tends to show that the order was written up in their office before it was signed and upon the date it bore, to-wit, May 2, 1926; that plaintiff requested that the payments start on July 15, which was agreed to, but nothing was said about how long the insurance was to be kept in force; that, in fact, nothing was said about the matter at all; that plaintiff did not call up Irwin Holzmark and tell him about the mistake made by finance company with reference to the payments and the insurance; that, in fact, plaintiff did not call said Holzmark at all; that the facts as to the amount of the insurance were obtained by defendants from the finance company; that that company received the money for and procured the insurance; that defendants had no insurance of any kind upon the car; that the insurance ran for one year; that defendants did not have at any time the insurance policy in their custody or access to it.

Defendants introduced the order in question which shows upon its face that at some time it was filled out in handwriting in such a way as to cover the agreement actually made when the car was purchased, except that there was nothing written in the order concerning the insurance. According to the defendants' testimony the order was filled out prior to the signing thereof by the plaintiff with the exception of the words appearing thereon, "80% F.T." The undisputed testimony shows that the note and chattel mortgage were executed on the date they bore, to-wit, May 27, 1926.

It is insisted by the defendants that their instruction in the nature of a demurrer to the evidence should have been given for the reason that there is no consideration alleged in the petition for the contract pleaded. The petition alleges that on or about May 27, 1926, plaintiff purchased from defendants an Overland automobile for the sum of $1207, paying therefor part cash and part with his note in the sum of $799.30; that plaintiff had paid all of said note with the exception of the sum of $66; that defendants agreed "and contracted with plaintiff orally to procure and maintain full fire and theft insurance on said automobile as long as any part of said note remained unpaid;" that the defendants on May 28, 1926, procured insurance upon the car in the sum of $1000 for one year: that the automobile was stolen on June 4, 1927; "that on the said 4th day of June, 1927. plaintiff still owed a portion of the said note and the defendants, and each of them were obligated to maintain theft insurance on said automobile but that, in breach of their contract, they failed and neglected to maintain any theft insurance on said automobile on the said date." The petition prayed judgment in the sum of $800 which was alleged to have been the value of the automobile on the date it was stolen.

The answer, among other things, pleads "that no agreement was made with plaintiff orally, but that said alleged agreement of plain-with defendants, if any, was wholly without consideration." If there was any defect in the petition in failing to allege a consideration for the contract pleaded, that defect was waived, under the doctrine of express aider, by the allegations of the answer. [Weber v. Rodgers et al., 193 S. W. 87, 88; Hughes v. Carson, 90 Mo. 399.] . However, we feel at this stage of the proceeding that the petition must be adjudged to allege, at least by inference, that the consideration for the agreement to procure insurance was the purchase and sale of the automobile to plaintiff. It is well stated in the case of Stevens v. Westport Laundry Co., 25 S. W. (2d) 491, 497, quoting from Timmerman v. Architectural Iron Co., 318 Mo. 429, 1 S. W. (2d) 791, 793:

"An objection to the sufficiency of the petition after verdict is not viewed with favor, and will not be sustained, 'if by reasonable

intendment, or by fair implication from facts stated, or if by most liberal construction the essential allegation may be got at by inference.' "

We have examined the case of Swift v. Cent. Union Fire Ins. Co., 279 Mo. 606, cited by defendants and find that the petition in that case alleges substantially nothing more than that an oral contract for insurance was made on a certain day, insuring certain property for a designated time. It was held in that case that there was no consideration alleged, but it is quite apparent that the petition in this case contains much more than that in the Swift case and that the case at bar clearly alleges by intendment that the insurance constituted a part of the agreement entered into relative to the sale of the car in question.

It is further insisted that the instruction in the nature of a demurrer to the evidence should have been given for the reason that plaintiff seeks to recover under an oral contract which was not to be performed within one year, in violation of section 2169, Revised Statutes 1919. There is no merit in this contention. [Brickley v. Cent. Gin Co., 113 Ark. 15, 27 C. J., p. 190.]

It is insisted that the court erred in permitting oral testimony contradicting the terms of the written order for the car which plaintiff purchased. The order recites that it comprised the entire agreement. The chattel mortgage signed by plaintiff provides that:

"Undersigned agrees to keep said property fully, satisfactorily and constantly insured in some insurance company, which the mortgagee, assigns or legal representatives shall designate, against loss or damage by fire, theft, collision and embezzlement in the sum of at least $1,000, F. & T. Dollars, and the policy or policies thereof constantly assigned or pledged and delivered to said mortgagee, assigns or legal representatives, until all of said amounts to become due hereunder have been fully paid and satisfied."

Over the objection of defendants, plaintiff was permitted to testify that Irwin Holzmark told him "you are fully protected on insurance for the life of your paper." Under the testimony of plaintiff there was no written contract entered into for the sale of the automobile he purchased from defendants. There was no meeting of minds of the parties at the time he signed the order on May 2, 1926, and of course, there was no contract entered into at that time nor was the order filled in in accordance with the agreement after it was made by the parties, as the order when filled out did not cover the matter of insurance. Taking the evidence, and all inferences to be drawn therefrom, in their most favorable light to the plaintiff the order was apparently filled in without his knowledge and not in accordance with the agreement. As we understand plaintiff's evidence, there is no question but that there never was any

written contract for the sale of the automobile in question. [Oakland Motor Co. v. Indiana Automobile Co., 201 Fed. 499, 505.]

The testimony of plaintiff concerning the agreement about insurance was not contradictory of the terms of the chattel mortgage. While the chattel mortgage recites that plaintiff was to keep the property insured, there is nothing in it to suggest that plaintiff could not perform that part of the agreement through an agent of his. The chattel mortgage provides, in effect, that plaintiff shall bear the expense of the insurance and see to it that it be perfected, but the oral agreement between plaintiff and defendants, by which defendants (having received the premium) were to see to it for plaintiff that the insurance was procured or maintained, is not inconsistent with these terms of the chattel mortgage. In fact it was but natural that defendants be selected by plaintiff as his agent to procure insurance because the chattel mortgage provides that defendants shall designate the insurance company to write the insurance and that the policy or policies should constantly be assigned or pledged and delivered to the defendants, their assigns, or legal representatives, until the note was fully paid.

It is insisted that the court erred in giving plaintiff's instruction No. 1 for the reason that it is claimed that no consideration for the oral contract attempted to be alleged in the petition was pleaded or proved. This question logically should have been raised in connection with the points in reference to the demurrer to the evidence. In that connection, we have already passed upon the matter of pleading.

There is no question but that the proof shows that the purchase and sale of the automobile in question, including the execution of the note and mortgage by plaintiff, was the consideration for the oral contract. The testimony shows that the matter of insurance was part of the terms of the agreement relative to the purchasing of the car. Defendants agreed, among other things, to keep the car insured during the life of the note in consideration of plaintiff purchasing the car.

It is claimed that the instruction is further erroneous because it covers plaintiff's entire case and directs a verdict, but "did not include the defenses raised, especially the defense that the written agreement of the parties embodied all of the terms and conditions of the agreement between the parties." We assume that it defendants' contention that one of their defenses was that the written order for the purchase of the car in question was signed by plaintiff after it was filled out; that it expressed the entire agreement between the parties and that the matter of insurance was not mentioned in it and, therefore, the jury should have been instructed that, if it was executed as defendants' evidence tended to show, their verdict should be for them.

We think a fair analysis of the answer shows no such defense was pleaded. The petition alleges that the contract for the sale of the car was made on *May 27*. The answer alleges that "on the day of the sale of said car to plaintiff as alleged in plaintiff's petition, plaintiff and defendants entered into a written contract," etc. Defendants' evidence tends to show that the contract or order was executed on May 2, and not on May 27, as pleaded in the answer. Therefore, the contract was not proved as pleaded by the defendants. Plaintiff's instruction No. 1 is quite lengthy and it would serve no useful purpose to copy it in this opinion. However, a mere reading of the instruction shows clearly that the jury could not have returned a verdict for the plaintiff under it without finding facts negativing the defense that the order or contract of purchase was fully filled out prior to its signing by plaintiff. The instruction has the jury find that the contract was made on May 27, and if the jury found that it was made on that date they necessarily found that it was not made on May 2. All of defendants' evidence shows that the order was filled out and executed on the latter day.

Complaint is made of the refusal of defendants' instruction submitting, in effect, that if plaintiff signed the written order on May 2, 1926, the verdict should be for the defendants. This instruction amounts to a demurrer to the evidence for the reason that it is admitted that plaintiff did sign the order on that date. The instruction does not have the jury find that the terms of the contract were agreed upon and inserted in the order at the time it was signed. From what we have said the instruction was properly refused.

The points that defendants' instruction in the nature of a demurrer to the evidence should have been given for the reason that "plaintiff failed to prove his measure of damages;" that the court erred in giving plaintiff's instruction No. 2, telling the jury that the measure of plaintiff's damages was the reasonable market value of the automobile on the day of the theft; that the verdict of $800 is not supported by the evidence and that the verdict is excessive, may all be considered together.

It is insisted that there is no evidence as to the reasonable market value of the automobile on the day of the theft. There is no question but that plaintiff showed that he suffered, at least, nominal damages and, therefore, for this reason, alone, the demurrer to the evidence was properly overruled. However, we think there was ample testimony not only tending to show the value of the car on the day of the theft but to support the verdict of the jury and, therefore, it is not excessive.

The testimony relative to the value of the car at the time it was stolen shows that, about a month and a half before the theft of the car, plaintiff called at defendants' place of business with reference

to trading it in on another car. At this time defendants offered plaintiff $650 "on a trade" for a new Overland car. The trade was not made. Subsequently plaintiff bought new tires for the car and had certain repairs made upon it. The tires and repairs cost approximately $100. When the car in question was stolen "it was in the best condition . . . it could possibly be in for a car of that age." All of this testimony was unobjected to and, while, defendants say that the jury was not entitled to consider the offer of the allowance of $650 for the car in question upon a new car and the $100 spent for tires and repairs, we think to the contrary.

There is no question but that measure of plaintiff's damage was the market value of the car at the time it was stolen. [Stephenson v. A. B. C. Fireproof Warehouse Co., 6 S. W. (2d) 676.] However, there was a number of ways of arriving at this damage. One was by the opinion of experts as to the value of the car at the time in question. Another, as was done by plaintiff in the case at bar. It is well settled that in arriving at the value of an automobile it is proper to take the cost of the car when new and from that amount deduct the depreciation in the car by reason of use, injury, damage, its condition and other proper elements accruing to it subsequent to the date of its purchase and, under such testimony, what that value is, is a question for the jury. [Teets v. Hahn (N. J.), 140 Atl. 427; Sevarese v. Hartford Fire Ins. Co. (N. J.), 123 Atl. 763; Strawbridge v. Standard Fire Ins. Co., 187 S. W. 79; Security Ins. Co. v. McAllister, 90 Okla. 274; Morgan v. Union Auto. Ins. Co., 150 Wash. 443; Whitcomb v. Automobile Ins. Co., 167 Minn. 362; Brown v. Dubuque Mfg. Co., 163 Ia. 484.]

In Teets v. Hahn, l. c. 428, the court said:

"Twelve men of ordinary intelligence sitting in a jury box, after hearing the testimony as to the cost of the car, its description and use, and its condition, would be fairly enabled to arrive at the damage sustained, without the aid of expert testimony."

The evidence shows that plaintiff paid $1207 for the car in question; that a short time before its theft he spent $100 upon it so as to put it in the best condition it could possibly be put in for a car of its age. The age of the car at the time of its theft was approximately a year. Under this testimony it was within the province of the jury to say that the value of the car at the time of its theft was $800.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

### ON REHEARING.

Defendants insist that there is no evidence that the automobile in question, at the time it was sold by them to plaintiff, was a new car.

There is no evidence either way on this point but the inferences from the evidence are that the automobile was new. In soliciting the sale the car shown plaintiff was a new car and the printed matter in the order introduced in evidence by defendants refers to the automobile in question as "the new car." These circumstances raise an inference that the automobile purchased by plaintiff was a new car.

The other points mentioned in the motion for a rehearing are fully covered in the opinion.

The motion for a rehearing is overruled.