Josephine Stevens, Administratrix, Alice A. Chase, Respondent, v. Westport Laundry Company, Appellant.

Kansas City Court of Appeals.   February 28, 1930.

956

*B. W. Boley* and *John D. Wendorff* for respondent.

*Cowgill & Popham* for appellant.

BOYER, C.—Action for damages on account of personal injury. Plaintiff, Alice A. Chase, sued defendant, Westport Laundry Company and others, and recovered judgment from which the laundry company appeals. Pending appeal plaintiff died and the cause was revived in the name of her administratrix.

The petition upon which the case was tried charges that plaintiff was injured on the 8th day of January, 1924, at the intersection of Forest avenue and Thirtieth street, highways in Kansas City, Missouri; that she was riding in an automobile at said place which was struck by another automobile operated by the defendants and their

agent in a negligent manner. The specific acts of negligence are alleged to be that, the defendants operated the automobile in question in violation of an ordinance of Kansas City, Missouri, regulating the rate of speed at street intersections, a part of which reads as follows:

"Provided, however, that in passing any street intersection, crossing or crosswalk within the limits of Kansas City, Missouri, the rate of speed for driving shall not exceed ten (10) miles per hour when any person or vehicle is upon said intersection, crossing or crosswalk with whom or with which there is or may be danger of collision."

, Plaintiff alleges that she was in the intersection of Forest avenue and Thirtieth street and while so there defendants, thru their agent, operated and ran their automobile into said intersection at a rate of speed in excess of ten miles per hour, and against the automobile in which plaintiff was riding; that defendants negligently failed to give any warning of their approach by horn or otherwise, notwithstanding plaintiff was in the travel portion of the street and in full view of defendant; that defendants negligently failed to keep their automobile under such control that same could be readily stopped; that defendants negligently ran and operated their automobile in a southerly direction on Forest avenue, being at the time of the accident on the east portion of said Forest avenue.

Plaintiff further alleges liability of defendants under the humanitarian rule in the following language:

"That defendants saw, or by the exercise of ordinary care could have seen, plaintiff in a position of imminent peril in time, by the exercise of ordinary care, to have slackened the speed of their automobile or stopped it or turned it aside and avoided colliding with plaintiff and the consequent injury, but that defendants carelessly and negligently failed so to do."

It was charged that by reason of the foregoing careless and negligent acts of defendants, their agent, servant and employee, plaintiff sustained injury. Physical injuries were alleged and also a profound nervous shock, and that plaintiff was rendered totally helpless and a confirmed invalid.

The answer was a general denial, and a plea of contributory negligence on the part of the plaintiff in that she was at said time occupying an automobile driven by her daughter-in-law at a high speed, when she knew or could have known that the driver was incompetent and without sufficient experience to operate said car; that said car was driven at an excessive speed, without any warning, into said street intersection, without protest by plaintiff; that plaintiff and the driver were in joint control of said car, on a joint mission, and are chargeable with the negligence and contributory negligence of each other, and that their acts and omissions were contributing

causes to the injury; that plaintiff was further guilty of contributory negligence in that she failed to warn the driver of said car of her high rate of speed, in failing to request the driver to reduce the speed, and in failing to warn the driver not to attempt to cross the street intersection when she saw, or could have seen, that there was another car upon said intersection, and to warn the driver of said traffic; that plaintiff was guilty of contributory negligence in engaging said driver in conversation and thereby diverting her attention from the observance of the course which said car was pursuing and the traffic on the streets.

The evidence tended to show that Thirtieth street, running east and west, and Forest avenue, running north and south, intersect at right angles; that on the 8th day of January, 1924, plaintiff was riding in a Ford automobile which was being driven east on Thirtieth street by her daughter-in-law; that when they approached Forest avenue the speed of the car in which they were riding was about ten miles per hour, and just as it entered Forest avenue it was slowed down to about five miles per hour, for another vehicle to pass, and they started on across the intersection; at that time the truck of defendant was seen by the driver about the width of the street north and about thirty feet north of the north line of Thirtieth street; when the car in which they were riding was across the center of Forest avenue and near the southeast corner of the intersection, the truck which had been seen approaching from the north struck this car at or near the left rear wheel and fender. The impact mashed the back fender, sprung the axle and made a big dent in the body of the Chase car. The truck approaching from the north was on the east side of Forest avenue. The accident occurred in the afternoon of a bright day and the pavement was dry. The automobile in which plaintiff was riding was owned by her son, and driven by her son's wife, for a drive, and to take plaintiff home from a visit to her doctor. The roadway of Thirtieth street was about twenty-four feet wide; this truck was about thirty feet north of Thirtieth street when seen by the driver. The driver proceeded across the intersection on the south side of Thirtieth street, and the front wheels of the car were "right at the curb" on the east side of Forest avenue when it was struck. It was knocked off the street, over into the parking on the south side of Thirtieth street east of Forest avenue, and caused to lunge and hit a tree about forty-five or fifty feet east of the curb line of Forest avenue, and appellant's truck, after the collision, turned and ran east on the south side of Thirtieth street and stopped opposite it. The driver of the truck said: "Lady, I didn't see you—the sun was shining on the windshield."

The driver of defendant's truck testified that he saw the driver of the car in which plaintiff was riding approach at a high rate of

speed, and not looking where she was going; that she was talking to another lady and was not looking in his direction, and that he thought she would look up and see him; that he was going six or seven miles per hour when he entered the intersection and could have stopped the truck at any time, and the only reason that he did not stop was that he thought the driver of the other car would look around and see him, and stop that car and give him the right of way; that when he did stop he stopped immediately; that he could have stopped the car if he had known that she was going to continue in her conversation with the other lady and not look to see whether anyone was coming from the north; that there was nothing to indicate she was going to do anything more than drive straight across the street.

The driver of the car in which plaintiff was riding testified that she looked both ways upon the street when entering the intersection for traffic. Plaintiff testified that she looked north on Forest avenue as they drove into Forest. She did not notice much in the street and if there had been any number of vehicles there she would have noticed; that she does not think that she saw the truck until it hit. On cross-examination she testified that she had confidence in the driver; that she left the direction to the driver; that she could drive all right; that she did not leave her safety entirely to the driver; that she trusted the driving to the driver because witness was not driving; that she did not know any reason why she should have looked more than she had; that her eyesight and hearing were good; that she looked north on Forest as they drove onto that street.

As a result of the collision, plaintiff was thrown against the windshield, her nose and face were bruised and cut; her hand and wrist cut; her knees bruised, and she sustained and suffered nervous shock. She was removed to a doctor's office where her wounds were dressed and then taken to her home. The evidence shows that she was bruised; her face black and blue; both eyes swollen about shut, and she could hardly see; her face was cut and she suffered intense pain; "she was up and down, could not stay in bed; so nervous." A doctor visited her every day for seven days; that she was not out of the house until March 22nd; between March 22nd and May 6th, she was taken in an automobile to a doctor's office about every day for eleven days and treated. After May 6, 1924, plaintiff was never out of her house. She was excessively nervous and complained of pain; by June she was down in bed. The doctor visited her at her home and treated her two or three times a week until January 17, 1927. At the time of the trial, March 21, 1927, she was helpless and had to be lifted in and out of bed. At the time of her injury she was seventy-three years of age, and prior to that time was able to go in and out any place she pleased; go to picture shows; do house-

work, wash the dishes, do laundry, work in the yard, walk about the neighborhood and visit as others did; she was never able to go around by herself after her injury.

Further reference to the evidence pertinent to the points under consideration will be made if necessary.

At the close of the evidence defendant requested a directed verdict for the reason, among others, that plaintiff was guilty of contributory negligence as a matter of law. This was refused. The case was submitted to the jury on specific grounds of negligence, and also upon the humanitarian doctrine. The verdict was for the plaintiff and her damages were assessed at $3500.

## OPINION.

Appellant assigns as errors (1) the admission of incompetent evidence, (2) the overruling of the demurrer, (3) the giving of instructions 1, 2, 3 and 5 for plaintiff, (4) the refusal to give instructions A and B offered by appellant, and the giving of said instructions in a modified form, and (5) that the verdict is excessive.

An opinion in this case was handed down at the March term, 1929, in which all of the points received consideration, and the judgment was affirmed. A rehearing was granted, and the case comes to the writer upon reassignment. The alleged errors will be considered in the order of their assignment.

The evidence about which plaintiff complains was the testimony of three doctors who had attended and treated the plaintiff. The complaint is that the doctors were permitted to give their *conclusions* that the invalidism of plaintiff "could" have resulted from the injuries received by her. Dr. Clark described her condition. After detailing to the doctor the circumstances of the collision and the accident he was asked:

"From your experience as a physician, will you say her present condition could have been caused from that sort of an accident?"

The objection made was that the question called "for a conclusion of the witness and as being based on the obsolete 'could or would' rule and improper in form, and also on the right of an expert to express himself by speculative, remote and conjectural evidence, dealing in possibilities, and it is not binding on the defendant." The objection was overruled and witness answered:

"I would say it could, and qualify it by saying it could be a contributory factor."

Defendant's motion to strike out the answer was overruled.

Dr. Hobbs described the condition of the patient as he found her in June, 1924, and at later times. The accident was described by the attorney and a part of the question was:

"From your experience as a physician will you tell the court and jury whether or not, in your judgment, the condition you now find her in and the condition in which you found her in June, 1924, could have resulted from such an accident."

Counsel for defendant objected on the ground that the question was in violation of the newer Missouri rule on evidence; that it called for a conclusion, was speculative and remote and did not include certain facts in evidence. The facts were supplied, included in the question, and then the doctor was asked to tell the court whether or not with all these things in mind, and from his experience as a physician this accident could have caused the condition in which he found the plaintiff. The objection was renewed, overruled, and the witness answered:

"I will say it is perfectly possible and probable that she should be in this condition because of this accident."

The motion to strike out the answer, as speculative and remote and for the reasons stated in the objection, was overruled, and then the following question and answer:

"Q. I am repeating the question first asked, and including the suggestions Mr. Popham made, then I want you to bear all these things in mind, and assumptions, and tell us whether or not, from your judgment as a physician, the accident did cause the condition in which you now find Mrs. Chase? A. I will say, yes."

There was no objection before the answer was given, but after the answer, counsel stated that he made the same objection that was offered to the previous question and answer. This was overruled. There was no motion to strike out the answer.

Dr. Woody, a chiropractor, who had treated plaintiff both before and after her injury, was asked:

"Tell the jury whether or not such an accident could have produced such a shock as described and whether or not that shock produces the present condition in which you now find her—could have produced the condition in which you found her."

The objection made to the question was that it called for a conclusion and was offered to utilize the obsolute Missouri "might or could" rule, and being a direct violation of the newer Missouri rule as being speculative, remote and conjectural. Counsel for plaintiff then said, "Well did it—I will modify it." The objection was overruled and the witness said: "What was the last of it; I didn't understand the last of the question."

"Q. Could it have produced the condition in which you found her? A. It could not produce all the condition in which she was in.

"Q. What portion of this condition did it produce?"

The objection was renewed and overruled and the witness answered:

"Why, of course, that could produce a violent shock to the nervous system, and then that would be part of the cause of her present condition, or the greater part of the present condition, I would state."

Defendant moved to strike out the answer for the reasons given before. The motion was overruled.

Appellant insists that by the above questions and answers the province of the jury was invaded, that the witnesses were not asked for their *opinions,* but were asked for their *conclusions* as to whether the accident caused her present condition and whether the injuries received in the accident "could" cause her present invalidism. Appellant contends that the case of O'Leary v. Scullin Steel Company, 303 Mo. 663, 260 S. W. l. c. 55, has established a "new rule" for the admissibility of expert testimony, and that the holding and ruling in that case precludes the admissibility of the evidence given in this case. A correct understandng of the O'Leary case furnishes no support for the contention. It holds that where the determination of a question, in issue, must depend entirely upon expert evidence, then the testimony, that a stated cause "might or could" result in a given effect, is not sufficient proof of the question thus in issue; but to constitute sufficient proof the witness must state that a given condition was or was not *caused* by the injury described. In such a case the opinion of the expert is not restricted to what "might or could" result. But we are not dealing in the instant case with the question presented in the O'Leary case. This is obvious. In the present case the condition of the injured plaintiff, before and after the accident, was fully described by the testimony of numerous lay witnesses. It was shown by them that prior to the injury the plaintiff looked younger than her years, was comparatively active for her age, and in comparatively good health; never confined to her bed with sickness, and that she was of a gay and cheerful disposition; and subsequent to her injury she suffered a continuous decline in physical health until she became a confirmed invalid and completely helpless; that she suffered great pain; that she was extremely nervous, sad and morose. Their evidence tended to exclude all other causes than the shock and injury received. From this evidence alone the jury could find the fact that her physical and nervous condition at the time she instituted suit was the result of the injury which she received. There is no reason why plaintiff should be deprived of the cumulative evidence of her doctors, and avail herself of their scientific opinion that the conditions resulting to her, might or could reasonably and probably result from the injuries which she received in the collision. We do not believe that the evidence given by the experts in this case was subject to the objection made. It has been frequently stated and restated, and affirmed and reaffirmed that similar testimony is admissible. [Schulz v. Ry. Co.

(Mo. Sup.), 4 S. W. (2d) 762; Nordmann v. [Bakery Co. (Mo. App.), 298 S. W. 1037, 1040; Edmondson v. Hotels Statler Co., 306 Mo. 216, 238, 267 S. W. 612, 618; Crowley v. American Car & Foundry Co. (Mo. App.), 279 S. W. 212, 214; Roberson v. Loose-Wiles (Mo. App.), 285 S. W. 127, 129, 130; Stewart v. American Railway Express Co. (Mo. App.), 18 S. W. (2d) 520, 522; Powers v. Kansas City (Mo. App.), 18 S. W. (2d) 545, 551; Gorman v. A. R. Jackson Kansas City Showcase Works (Mo. App.), 19 S. W. (2d) 559, 561, 562, 564.] Cases cited in support of the above are innumerable.

The O'Leary case in no manner limits, or restricts, or prohibits the use of expert testimony as usually and ordinarily employed in a typical personal injury case. It does establish a pointed exception in respect to the weight and sufficiency of expert testimony upon a given issue, which may be proved only by the evidence of men of science. In such a situation the testimony must be explicit and positive, from cause to effect, that the stated injury did in fact *cause* the condition which followed.

As stated in the Stewart case, supra, in the opinion of the learned court:

"The case of O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55, holds that under circumstances such as were shown to exist, it was proper to admit medical testimony to show what caused the condition complained of, and it overruled the rule that medical evidence was proper to show the condition might or could have produced the result only so far as concerned the facts in the case then before the court."

We see no substance in the insistence and argument of appellant that the admission of the evidence in this case was erroneous. We think it properly admitted and rule the point against appellant.

It will be observed that one of the doctors stated it to be his judgment that the accident did cause the condition in which he then found the patient. This question was asked, and answer given, after argument over the form of the question, calling for an answer as to whether the accident *could* have caused the condition; and counsel for defendant waited until after the answer was given before any objection was made. It was apparently his position to compel the physician to so testify, instead of giving their opinion as to what might or could result, and require them to state whether or not the condition did, or did not, result from the injury. When this question was finally put in that form he waited for an answer to be given, and it was then too late for him to object, and he cannot complain. The error was invited. Appellant is not in position to complain for the further reason that in presenting its medical testimony, the doctor was asked specifically to state his *conclusions,* as well as his opinion, why the patient's present condition could not be produced

964

by the accident; and the doctor was specifically asked to state the cause of her disability, and was permitted upon appellant's demand to state and to give his *conclusions* as to whether or not the accident had any effect in producing her present disability. He said the accident did not cause it. In view of this method of examination appellant is estopped to complain of the examination of plaintiff's doctors, even if it offends in any of the respects charged.

The next assignment is that the demurrer should have been sustained because plaintiff convicts herself of contributory negligence as a matter of law. Appellant relies upon certain excerpts from the evidence of plaintiff elicited on cross-examination from which, taken alone, it might appear that plaintiff depended entirely upon the driver of the car for her own safety, and neglected to use her sense of sight and observation to avoid approaching danger; but this is not all of her testimony, as shown by that set out in the statement, in which she expressly states that she did look upon entering Forest avenue, and further to the effect that she did not feel justified in interfering with and controlling the direction of the car because her daughter-in-law was a good driver, and she trusted her. It cannot be said reasonably that such evidence would convict a guest, or passenger, riding in a car of such contributory negligence as to defeat recovery. Further, from the evidence in the case it appears that anything which she might have done could not have averted the collision, occasioned by the apparently careless and reckless conduct of the driver of the truck. It further appears that this testimony of plaintiff was contained in her deposition taken shortly before the trial and when she was bedridden, and had been for many months. The driver of the car testified positively that she was looking both up and down the street when she entered the intersection and there was nothing in the way, or approaching, except the truck of defendant which was then thirty feet north of the north line of Thirtieth street. This evidence shows that if plaintiff had looked she would have seen the same and nothing more, and any warning that she might have given, or anything that she might have done could not have aided the driver either to anticipate, or to avoid, the collision. It will further be observed that this case was submitted to the jury upon the humanitarian doctrine, as well as upon the grounds of other negligence, and even though plaintiff may be said to have been guilty of contributory negligence she nevertheless had the right to have her case submitted to the jury, in the presence of evidence in the case to support recovery, on that theory. The demurrer was properly overruled.

Appellant assails instruction 1. This instruction submitted to the jury different grounds of specific negligence upon a finding of which, the jury was authorized to find for plaintiff. A part of the instruction reads as follows:

"And if you further believe and find from the evidence that said collision of said automobiles, if you so find, was caused by the carelessness and negligence of the driver of defendant's said truck by operating and driving the same along and over said intersection of said streets at a rate of speed in excess of ten miles per hour, if you so find, . . . , then your verdict will be for plaintiff."

The first criticism is that this part of it authorizes a recovery for plaintiff, under the ordinance referred to, if the jury found that defendant's driver drove into the intersection at a rate of speed in excess of ten miles per hour, without requiring the jury to find that at the time some person or vehicle was upon the street intersection with whom or with which there was danger of collision. A reading of the entire instruction shows the criticism is unfounded. Among other things, and preceding the part just quoted, the instruction requires the jury to find:

"That while plaintiff was in an automobile and in the exercise of ordinary care for her own safety, if you so find, going in an easterly direction along and over said intersection of said streets, defendant's agent, servant and employee while operating an automobile truck belonging to defendant, if you so find, going in a southerly direction along and over said intersection of said streets, if you so find, carelessly and negligently caused and permitted defendant's said truck to come in contact and collide with the automobile in which plaintiff was riding, if you so find."

The last quoted part of the instruction immediately precedes that part which is criticised and plainly shows that the jury was required to find, that plaintiff was in the intersection, and hence likely to be struck, at the time defendant's driver approached and entered the intersection. The condition in the ordinance was completely met and covered by the instruction and required the jury to find every essential fact necessary to convict defendant under the ordinance.

The next criticism of instruction 1 is that it assumes that the driver was careless and negligent and does not require the jury to find that fact. A fair reading of the instruction shows that nothing is assumed and that the jury is required to find every substantive fact from the evidence before it may render a verdict for the plaintiff. The criticism of "if you so find" and its various positions in the instruction is not well founded, and a fair interpretation of the whole instruction shows that it is clear, unambiguous and not misleading in any respect. The phrase, "if you so find," placed in an instruction after a recital of facts is not objectionable as assuming the facts so recited. [Dodge v. City, 260 S. W. 1012; Costello v. Kansas City, 280 Mo. 576; Roy v. Kansas City, 224 S. W. 132, 139.] The instruction was not erroneous as charged.

Instruction 2 submitted the case to the jury on the humanitarian theory. Appellant insists that this instruction is wrong because plain-

tiff had no right to submit her case upon that theory. That under the facts in the case, defendant did not have sufficient time, or any opportunity, in the exercise of ordinary care, to avoid the collision. The facts recited in the statement show that defendant's driver, from his evidence, was proceeding at the rate of six or seven miles per hour and could have stopped at any time, and that when he did stop he stopped immediately, and that he would have stopped sooner only for the fact that he thought the lady who was driving would turn around and see him. He saw that she was not looking and did not see him, but proceeded. Under plaintiff's evidence he was thirty feet north of the north line of Thirtieth street when plaintiff entered the intersection, and under his own evidence, he had ample time and opportunity, with the means at hand, to have stopped the truck, or turned it aside, and avoided this collision, after he saw and realized that the driver was oblivious to his approach and to the danger to herself and guest. On the pleadings and the evidence, plaintiff was entitled to have her case submitted to the jury upon this theory. [Hornbuckle v. McCarty, 295 Mo. 162; Banks v. Morris & Co., 302 Mo. 254, l. c. 267 et seq.; Burke v. Pappas, 316 Mo. 1235.] But appellant says that if submissible on this theory the instruction "omits substantive elements of the legal requirements and is without support in the pleadings." That the "petition wholly omits the essential elements of the last chance rule, the ability to act with the means at hand, the safety of the occupants of the laundry truck, and the safety of the laundry truck itself." That paragraph of the petition charging liability under the humanity rule is set out in the statement. It does not contain the things which appellant says it omits. The instruction contains the words "with the means at hand and with safety to the occupants of said automobile truck." The criticism is that the petition is defective because of the omission alleged, and further that the instruction is broader than the petition. The facts omitted are evidentiary in character and need not be pleaded. "The perilous situation of plaintiff and defendant's knowledge of it are the ultimate, issuable facts. Such facts and only such facts must be pleaded." [Banks v. Morris & Co., 302 Mo. 254, 267 et seq.] The petition contains a sufficient statement of a cause of action under the humanity rule, and all necessary allegations are either expressed or will be implied. An objection to the sufficiency of the petition after verdict is not viewed with favor and will not be sustained, "if by reasonable intendment, or by fair implication from the facts stated, or if by most liberal construction, the essential allegation may be got at by inference." [Timmerman v. Architectural Iron Co., 318 Mo. l. c. 429; Ice & Storage Co. v. Kuhlmann, 238 Mo. l. c. 702; Melvin v. Cater, 221 Mo. App. 1212, 1216.]

The evidence to establish such a cause of action appears from the testimony of defendant's witness. The sufficiency of the petition

was not tested by demurrer. The case was tried the same as though the petition were perfect. There was no claim of surprise by variance. The evidence having fully shown the facts which the jury was required to find by the instruction, and after verdict by the jury, the petition would be considered as amended to conform to the facts, if such an amendment were necessary. [Solomon v. Moberly Light & Power Co., 303 Mo. 622, 633; Ehrlich v. Mittelberg, 299 Mo. 284, 301; Swift v. St. Louis, San Francisco Ry. Co., 15 S. W. (2d) 964.]

Instruction 3 declared negligence as a matter of law, if the jury found certain facts recited in the ordinance. The criticism of the instruction is that it "does not require the jury to find that there was any person or vehicle upon said intersection, crossing or crosswalk, with whom or with which there was or might be danger of collision." The instruction expressly requires the jury to find that the driver of the automobile in which plaintiff was riding had entered the intersection of the streets where the accident took place, and that after she had entered said intersection the defendant's agent drove its automobile into said intersection at a negligent rate of speed. In view of this express requirement there is no merit in this criticism. To have required the jury to find that there was or might be danger of collision, at the time, would have required a finding of an obvious, if not an admitted fact. If this fact is not now conceded by defendant it was, at least, established by the evidence of defendant. Plaintiff says there was danger of collision and defendant proves it. Failure to require the jury to find a fact thus alleged and proved could not be error. [Huckshold v. Rys. Co., 234 S. W. 1072.]

Instruction 5 reads as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was not the owner of the automobile in which she was riding and was not operating said automobile, but was merely the guest of the driver, the negligence of the driver, if any, cannot be imputed or charged to this plaintiff."

The error charged against this instruction is that, under the evidence in the case, plaintiff and the driver of the car were engaged in a joint enterprise and the instruction could have no application to the case. Defendant's theory of a joint enterprise was submitted to the jury in its instructions. The evidence is that the car in which plaintiff was riding belonged to her son; that her son's wife on the day of the accident took plaintiff to call upon a doctor, and at the time of the accident was going for a drive, and later to return plaintiff to her home. Plaintiff had no interest or ownership in the car, and no control, or right of control, over its management. She was no more chargeable with the negligence of the driver than a mere passenger, or guest riding as an invitee. She had never driven a car,

and knew nothing about driving one, and there was no evidence that plaintiff had cause to suspect any incompetency, or to anticipate negligence, if any, on the part of the driver. [Pettitt v. City, 267 S. W. 954, 956.] There was no error in this instruction. The case of Tannehill v. Ry., 213 S. W. 1. c. 822, cited by appellant, has no application to the facts in this case. In that case the occupants of the car were joint owners, engaged jointly in business, and each of them had a joint right of control over the management and direction of the car. The case relied upon reaffirms the general rule that a mere guest or passenger who has no authority over the machine, or driver, is not chargeable with the driver's negligence, and to the same effect is the case of Jepson v. Trans. Co., 211 Mo. App. 366, 373, 243 S. W. 370.

Instructions A and B offered by defendant, in substance, direct the jury to find for defendant if plaintiff was guilty of contributory negligence. The court refused to give these instructions and modified them by adding thereto the following:

"Unless you should find for plaintiff under instruction 2."

Appellant does not take the pains at any place in its brief or argument to indicate wherein the action of the court was erroneous, but merely says: "We are convinced that the instructions should have been given as asked, that the modification was improper and that the last chance doctrine ought not to have been submitted." What has been said heretofore disposes of this objection. There was no error in the modification of the instructions.

There is no merit in the contention that the verdict is excessive. If the evidence of numerous witnesses, offered by plaintiff is to be believed in reference to the nature, character and extent of plaintiff's injury, and the resulting disability to her, the sum awarded is moderate. Manifestly the verdict was for the right party.

We fail to find any material error or defect in any respect whatever, in the pleadings or proceedings affecting the substantial rights of appellant. The judgment should be affirmed. The commissioner so recommends. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is hereby adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.