JOHN F. KELLEY ET AL., RESPONDENTS, v. KANSAS CITY BUILDING & LOAN ASSOCIATION, APPELLANT.—81 S. W. (2d) 440.

Kansas City Court of Appeals. February 18, 1935.

*Benj. W. Grover* and *Grover & Browne* for respondent.

*Reinhardt & Schibsby* for appellant.

REYNOLDS, C.—This cause originated on January 6, 1933, with the filing of the petition herein by the plaintiffs. The plaintiffs are husband and wife; and, by the amended petition upon which the cause was tried, they seek the recovery of damages for the loss of the services, aid, and companionship of their two minor children, John F., Jr., and Dorothy Lee, by reason of injuries to said children through certain alleged negligent acts of the defendant, set forth in the amended petition, in installing a septic tank upon premises at 5610 East Twenty-ninth Street, Kansas City, Missouri, owned by it and adjoining the premises owned by plaintiffs at 5612 East Twenty-ninth Street, Kansas City, Missouri, upon which plaintiffs resided with said children as members of their household, and in maintaining and operating said tank so that foul and filthy matter gathered therein and was negligently allowed to escape therefrom and drain over and stand upon plaintiffs' property in large quantities, from and since January 1, 1930, emitting foul and noxious fumes, gases, and odors which permeated plaintiffs' property and the air in and about plaintiffs' premises and entered the dwelling thereon in which they lived, by reason of which the said children became poisoned, were rendered anaemic, and were otherwise injuriously affected in a permanent manner.

Plaintiffs further sought recovery for damages for the rental and usable value of their said property and likewise for the market value thereof, all of which they alleged in the amended petition had become injuriously affected and diminished by reason of the said negligence of defendant as aforesaid in the installation and maintenance of said septic tank in a manner to create a nuisance upon plaintiffs' premises from the overflow thereon from said tank, as set out therein.

The answer was a general denial.

The damages for which recovery was sought were not separately set out but were alleged to amount in the aggregate to the sum of

$7500. Upon trial before the court and a jury, a lump verdict for $900 was returned, upon which judgment in such sum was by the court rendered for plaintiffs against the defendant. From such adverse judgment, after unsuccessful motions for a new trial and in arrest of judgment, the defendant appeals.

The petition, after alleging the creation and maintenance of the condition resulting from the building and maintenance of the septic tank by defendant and the overflow therefrom, charged that such condition was a nuisance and that defendant knew, or should have known by the exercise of due care, of such condition in time, prior to March 5, 1930, to have remedied such condition or to have removed said septic tank and thereby avoided the injury and damage to plaintiffs but that defendant negligently failed so to do.

It further alleged the negligence of defendant in the construction of the septic tank complained of in violation of an ordinance of Kansas City, Missouri, in failing to secure a permit for its construction. It further alleged that the condition upon plaintiffs' property created by the septic tank was a nuisance and that it was maintained in violation of a city ordinance of Kansas City, duly set out in said petition.

There is evidence in the record tending to show that plaintiffs had continuously lived upon the property owned and occupied by them since the year 1924, together with their two children, John F., Jr., and Dorothy Lee; that the ages of such children at the time of the trial were respectively twelve and ten years; that, in the fall of 1929, the defendant, being the owner of the adjoining premises upon the west, erected a septic tank thereon; that plaintiffs' lot was lower than defendant's, the grade of the surface upon and from defendant's lot sloping to the east and across plaintiffs'. Both properties front on Twenty-ninth Street, Kansas City, Missouri. There does not appear to be any public sewer at or convenient to the point where said properties are located on Twenty-ninth Street, the nearest one thereto being upon Twenty-ninth Street and Oakley. There appears to have been about sixteen dwelling houses in the same block with said properties facing north and south on Twenty-eighth Street Terrace and on Twenty-ninth Street, which block appears to be about 220 feet square. These sixteen dwellings appear to have had for use sixteen privies situated upon the lots upon which said dwellings stand. It appears that, at the time the septic tank was constructed by defendant, the plaintiffs' children were healthy, robust, and strong and had never been troubled with sickness or other disorders and that they were fond of play and liked school. In January, 1930, the contents of the tank began to drain over on plaintiffs' property. The tank was constructed from two large, round Dickey pipes or tiles, each of 200 gallon capacity, set one upon the other in a hole dug in the ground several feet deep, with laterals

leading out therefrom. The tank was covered and was about one foot beneath the surface. One lateral ran in an easterly direction toward plaintiffs' property line, and one directly northeast toward plaintiffs' house; one of the same ran to within four or five feet of plaintiffs' property, and the other within three feet of the west line of plaintiffs' lot. The laterals were intended to drain the contents of the tank and distribute it in the ground, under the surface thereof, but proved inadequate therefor. The overflow from said tank, draining over on plaintiffs' lot in January, 1930, came at first in a stream. It came to a point twenty or twenty-five feet to the rear of plaintiffs' house and to a sidewalk maintained by them in their back yard, then along the sidewalk to the back steps leading into plaintiffs' house, where it stood and formed a pool from four to six feet in width, from which some ran on over to the east side of the plaintiffs' lot. The stream at the sidewalk was eighteen inches wide. It was a thick, dirty, putrid liquid of a black-brown color with distressing odor. In the summer time, plaintiffs were compelled, on account of the stench, to keep the windows in their house down and sometimes to leave. Immediately upon or soon after the overflow, defendant was notified of the condition arising and was requested to abate it. However, it continued and had not been abated at the time the suit was brought, but appears to have been between the time the suit was brought and the trial. The children played in the back yard where the ground was saturated with the overflow, although efforts were made by the plaintiffs to prevent them from doing so. In the spring of 1932, the children developed a rash upon their limbs and bodies; the little girl had fainting spells. The boy failed in his school work for 1931. They had fever in both 1931 and 1932. The little girl's skin became infected, and large sores came upon her back and legs. Neither of the children would play or eat, and both were very much run down. At the time of the trial, they, while somewhat better, did not play as they did before the tank was installed. They sat around the house and were more quiet than they had formerly been.

There was evidence of an expert character by Dr. Frazier, a witness upon the trial, tending to show that the injuries sustained by the children, as indicated by the symptoms described to him and as testified to by other witnesses, could have been occasioned by the conditions created and existing upon and about plaintiffs' premises from the septic tank and the overflow therefrom and as a direct result therefrom.

Upon the trial, the plaintiffs appear to have abandoned any claim or claims for damages for deterioration of the usable rental or market value of their property. At least, it does not appear from the record that any evidence was introduced with respect to such values.

The petition, with the above and other allegations, sufficiently states a cause of action.

Upon the trial, at the close of plaintiffs' evidence, the defendant requested an instruction directing a verdict in its behalf, which was by the court refused. Again, at the close of the whole evidence, defendant renewed its request for a directed verdict, which was again refused.

## OPINION.

■ Upon this appeal, defendant assigns error upon the trial as follows:

### "I.

"The court erred in refusing to give the peremptory instruction for defendant, offered by defendant at the close of plaintiffs' case.

### "II.

"The court erred in refusing to give the peremptory instruction for defendant, offered by defendant at the close of all the evidence.

### "III.

"The court erred in permitting the witness, Dr. Frazier, over the objection of the defendant, to state his conclusions that plaintiffs' children had been suffering from streptococci, and that these germs came from the overflow from defendant's septic tank.

### "IV.

"The court erred in submitting to the jury, over defendant's objection, the subject of permanent injury to the health of plaintiffs' children."

■ The burden of defendant's complaint with respect to the refusal of the trial court to grant its request for a directed verdict at the close of the whole evidence, as further gathered from its points and authorities and argument following in the brief, is that plaintiffs' case, as submitted by the court, was, under the evidence, one resting upon conjecture and inference upon inference and, for such reason, was not submissible; that defendant was entitled to a directed verdict upon such evidence and to its instruction requested therefor; that the evidence, being of such nature with respect to whether the injuries to plaintiffs' children were caused by the negligent acts of defendant or some cause for which defendant was not liable, was not sufficient for the submission of the case upon the theory of defendant's liability for such injuries or for basing thereon a verdict against defendant on account of such injuries.

In all tort actions, there are at least two principal issues involved, first, whether the defendant is negligent as charged, and, second, whether the injuries complained of by plaintiff are the direct and proximate result of such negligence. [Wielms v. St. Louis County Gas Co. (Mo. App.), 37 S. W. (2d) 454; Fenton v. Hart (Mo. App.), 73 S. W. (2d) 1034.]

The burden of proof is upon the plaintiffs to show both the neg-

ligence asserted and the causal connection of the injuries complained of therewith. [Coble v. St. Louis-San Francisco R. Co. (Mo.), 38 S. W. (2d) 1031; Fenton v. Hart, supra.] Where the ultimate facts are not susceptible of direct proof, their existence must directly follow as a reasonable conclusion from the basic facts and circumstances shown. [Coble v. St. Louis-San Francisco R. Co., supra; Fenton v. Hart, supra.]

Upon a review and consideration of the evidence in the record, we are unable to agree with defendant in its contentions. The evidence is not subject to the criticism leveled against it; but, upon the other hand, it is sufficient in all respects for submission to the jury and for its verdict thereon, under all the circumstances existing. The acts of negligence charged are clearly shown, as are also the injuries complained of; and that such injuries are the proximate and direct result of such negligence is a matter of reasonable inference from such facts and the basic circumstances surrounding.

Upon a consideration of all of the facts in the record, there was no other reasonable inference to be drawn than that the injuries to plaintiffs' children were the result of the poisonous gases and germs issuing from the filthy and poisonous condition created and maintained upon and about plaintiffs' premises by the construction of the septic tank upon defendant's adjoining lot and the overflow upon plaintiffs' lot of the putrid matter therefrom.

That such condition as was thus created and maintained over an extended period, upon the surface of the ground, would directly cause the injuries to plaintiffs' children, complained of and described by them and shown by the evidence of other witnesses in the record, was shown by Dr. Frazier, who was called as a witness by plaintiffs upon the trial and who qualified as an expert. In answer to an hypothetical question (based upon the facts in the record respecting the building of said septic tank and the overflow therefrom onto plaintiffs' premises and the condition created on plaintiffs' premises by such overflow and its maintenance, as well as upon other facts with reference to the condition of plaintiffs' children as being diseased and poisoned and the symptoms thereof testified to by other witnesses) as to whether such condition as so created and maintained would directly cause such injuries to such children, Dr. Frazier answered that he believed it would. There was no substantial evidence in the record of anything else by which such injuries might have been caused. Such witness further testified, in answer to a further hypothetical question embodying the same facts and the further facts as to the continued condition and symptoms of said children from January, 1930, to the date of the trial, that, in his opinion, the injuries were permanent,

Moreover, there was evidence elicited by defendant, in its cross-examination of Dr. Frazier, to the effect that the eruptions found

upon plaintiffs' childrens' skin, upon their limbs and bodies, described by the witnesses as rash, were conditions commonly brought about and produced by the bacterial creations or miscroorganisms found in connection with conditions such as were created by the septic tank and its overflow, known as streptococcus germs, coming in contact with the persons affected, whereby such persons became infected with said germs or seized of what is known as streptococcus pyogeneses aureus.

It was further elicited by defendant, upon its cross-examination of Dr. Frazier, that the fainting spells with which the little girl suffered could easily have been the result of such condition through the same germs; that many physical disturbances might ordinarily result therefrom; that fevers of various kinds might result and the system might become so underminded that any disease might come in and supervene.

It thus appears that the basic facts as to defendant's negligence and the injuries to plaintiffs' children, complained of, are established by direct evidence in the record and that the causal connection between such injuries and such negligence is reasonably to be inferred from the basic circumstances surrounding, therein directly shown. The case made is not one of mere conjecture, nor does it depend upon the pyramiding of one inference upon another. As was substantially stated by BLAND, J., in the case of American Veterinary Laboratories v. Glidden Co., 227 Mo. App. 799, 59 S. W. (2d) 53, as many different inferences may be indulged as different basic facts and circumstances shown in the evidence may justify.

It has likewise been held that one general inference, where consistently supported, may be drawn from the entire basic situation shown by the record. [Fenton v. Hart, supra.]

█ In this case, the issues in question did not depend for their determination upon the scientific knowledge of expert witnesses; but the facts in evidence and the issues to be determined and the inferences to be drawn were all such as come within the common knowledge of mankind. Thus, it is a matter of common knowledge that conditions of putrid filth of the character disclosed by the evidence, created by the overflow from defendant's septic tank, existing for any prolonged length of time upon the surface of the earth, are a menace to health and promote sickness and disease; that such conditions are foul and poisonous; that poisonous gases and odors issue therefrom, befouling the earth and polluting the atmosphere; that they foster bacteria and microorganisms, which breed and multiply and carry inbred poisons with which persons who come in contact therewith or become exposed thereto become infected and from which disorders, disease, and sickness follow.

The connection between the dangerous character of such conditions and the existence of disorders and diseases in those who are

exposed to such conditions or who come in contact therewith or the products thereof is well known to the lay mind; and, where such conditions are found to exist and to be maintained and bodily disorders and diseases of those about ensue or follow, that such are the result of and are caused by such conditions, in the absence of any other cause reasonably appearing to account therefor, is a reasonable inference to be readily drawn by such mind.

■ Under such circumstances as shown by the record, expert evidence is not required in order that it may be shown that the injuries complained of were caused by the overflow condition prevailing. Where, however, an expert witness is used, his evidence is to be regarded as cumulative and corroborative only; and it is not required or permitted that he testify that such conditions did, in fact, cause the injuries; but it is permitted only that he may testify that such conditions might or could or would have caused such injuries. [Stevens v. Westport Laundry Co. (Mo. App.), 25 S. W. (2d) 491, l. c. 495.] If such witness testified in this case that the overflow condition did cause the injuries complained of or was presumed to do so, such testimony was elicited by defendant upon his cross-examination, who at the time made no objection thereto and cannot now therefore be heard to complain.

· ■ True, as defendant contends, there was other evidence introduced in the record as to the maintenance by plaintiffs of a privy upon the rear of their premises without sewer connections and of the maintenance of other privies, some fifteen or sixteen, by other residents in the immediate vicinity, upon the surface of their respective lots, in which privies human excretions were being daily deposited; and defendant argues that the maintenance of such privies and the conditions created thereby could have caused the injuries to plaintiffs' children, complained of, and that it was therefore a mere guess, under the evidence, as to whether such injuries were created by conditions caused by the septic tank and its overflow or by conditions created by the deposit of putrid matter in the privies.

We do not so regard it. In the first place, there is no showing in the evidence that any injurious or deleterious condition was created by the use of the privies or that they were built or maintained in a manner to create a nuisance or an unsanitary condition, if at all, comparable in any manner with that created by defendant by its septic tank and the overflow therefrom. If the offal from any of the same was allowed to stand in the open air or form a cesspool, generating poisonous gases and breeding germs, the evidence does not so disclose. The evidence shows, with respect to the plaintiffs' privy, that it was constructed over a deep hole in the ground for the deposit of excretions therein; and there is no showing that such were ever allowed to escape therefrom and form and stand in cesspools upon the surface where the children would come in contact with

them or be exposed to them. The dish and other water from their dwelling was, for the greater part, poured out upon cinders and ash piles at the rear end of their lot at a point across the lot from the privy and was absorbed by such ashes and cinders. There was no showing made with reference to the other privies; but the evidence does not show that any complaints were ever made with reference to the conditions, sanitary or otherwise, created by their use and maintenance. To start with, there was no showing made that they were maintained in an unsanitary or injurious condition and no substantial showing, amounting even to a probability, that the troubles with which plaintiffs' children were afflicted were occasioned thereby or that poisonous germs bred by such conditions as might have prevailed by the deposit of human excretions therein could have produced their troubles. True, if such germs existed in the privies, plaintiffs' children might, in some remote manner, have become infected thereby, by flies or mosquitoes or other insects carrying the same. There is no substantial evidence in the record, however, that they were so transmitted to them and caused their injuries; nor, under the evidence, could it be reasonably inferred that such a transmission of the germs therefrom was the cause of their troubles rather than the condition created by the overflow from the septic tank. That such troubles arose from the use of the surrounding privies or from any conditions created by such use, moreover, is negatived by the fact that plaintiffs had lived in the same house with their children, with the same privies and the conditions created thereby surrounding them, for six years or more prior to the introduction of the septic tank without any injuries of the character complained of and that, after the abatement in 1932 of the condition created by the septic tank and the overflow therefrom, the conditions of health of plaintiffs' children were materially improved.

Until after the installation of the septic tank and its overflow, plaintiffs' children never developed any disorders of any character or displayed lack of vigor, health, activity, and life; nor were they subject to eruptions upon their bodies or sickness of any kind—all of which tend strongly to establish that such tank and its overflow and the condition created thereby were the cause of their troubles.

We do not question the legal proposition asserted by defendant that, where the injuries complained of may have reasonably resulted from one of two causes for one of which defendant is liable and not the other, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result and, if the evidence leaves it to conjecture, the plaintiff must fail. Such is the law. [Smart v. Kansas City, 91 Mo. App. 586; Epperson v. Postal Tel. Cable Co., 155 Mo. 346, 50 S. W. 795.]

But here, no such condition is shown under the evidence. There is substantial evidence from which it may be inferred that the injuries

to plaintiffs' children were the proximate and direct result of the negligence of the defendant as charged in the petition and no substantial evidence that there was any other cause from which they might reasonably have resulted and no substantial evidence that they did result from any other cause. Upon the whole record, the plaintiffs made a case for the jury, based upon substantial evidence; and the question as to defendant's negligence being the cause of the children's injuries was not left as a mere matter of guess and conjecture. Defendant's request for a directed verdict at the close of the whole evidence was rightly ruled by the trial court.

■ Upon this appeal, the defendant assigns as error the action of the trial court in permitting witness Dr. Frazier to state as an expert his conclusions that plaintiffs' children had been suffering from streptococci and that these germs came from the overflow from defendant's septic tank and makes the point that it was error to allow such witness to invade the province of the jury by stating his conclusions on the main issues before the jury or by indulging in conjecture. In its argument, it further contends that it was error to permit the witness, Dr. Frazier, to state to the jury his conclusions that the rash upon the children was caused by streptococci and that the same came from sewage or other pools and wet places—such as the condition in plaintiffs' back yard—and that the injuries to the children were permanent; that his conclusions invaded the province of the jury on the very point on which the case must rest. It will be noticed, however, that there was no objection made upon the trial below to the testimony of the witness with reference to the permanency of the injuries. The question of error in such regard is therefore not before us on this appeal. [Morton v. St. Louis-San Francisco R. Co. (Mo.), 20 S. W. (2d) 34, l. c. 45.]

■ Likewise, the record fails to show that the plaintiffs made inquiry of the witness with reference to their children's suffering from streptococci infection or that such witness made the answer to any question asked him by plaintiffs that such children were suffering with streptococci infection and that such germs found their homes in the seepage or conditions such as were created by the overflow of the septic tank. The fact that such children were suffering with streptococci infection was elicited from the witness by the defendant in response to questions asked the witness upon cross-examination. No motion was made by defendant to strike out such statements or answers by the witness on the ground that the same were not responsive to the questions asked or for other reasons; nor was an objection made known by defendant to such statements or questions in any manner. Upon the other hand, it examined the witness with respect thereto at length. Any error, therefore, with respect to the mention of streptococci by the witness or to his conclusions as to the children's injuries with respect thereto, if error there was,

was induced by defendant; and it cannot here be heard to complain. Neither was any objection to the testimony of Dr. Frazier in answer to the hypothetical questions asked him made upon the trial to the effect that, by his answers thereto, he invaded the province of the jury. The error here assigned relates to error charged to the trial court in permitting the witness, Dr. Frazier, to state his conclusions that the children were infected by streptococci and that streptococci germs existed in sewage pools of any sort and in conditions such as existed in plaintiffs' back yard by reason of the overflow from the septic tank, which conclusions, as we have found, were not made by him in response to questions asked him by plaintiffs but were in response to questions asked by defendant alone, to which, when given, no motion to strike or other objection was made by defendant. The assignment, point, and argument thereunder, therefore wholly fail to present any claim of error for review. [Morton v. St. Louis-San Francisco R. Co., supra.]

■ Defendant finally contends that the trial court erred in submitting to the jury the question of the permanency of the injuries to plaintiffs' children. The testimony of Dr. Frazier, admitted upon the trial without objection, was to the effect that the conditions of plaintiffs' children with respect to their injuries were permanent. Of the admission of such testimony, we have held defendant cannot now complain.

That such condition of permanency was submitted as an element of damages does not clearly appear. No mention of the permanency of such injuries is found in the instructions; but the instructions as to the damages to be returned, if any, authorized damages, if any, for loss of the services and companionship of such children while minors and until they arrived at the age of twenty-one years, as was suffered and sustained by plaintiffs. If this be construed as authorizing a verdict for permanent injuries, it is justified by the evidence in the record of Dr. Frazier, above noted, admitted without objection. Even if erroneous, where admitted to the record without objection, it is for consideration in connection with whatever it may tend to prove. It sufficiently appears from the facts hypothecated, upon which his opinion is based, that his evidence was based upon sufficient evidence to justify his answers and that the evidence in such regard is not subject to defendant's criticism.

■ It is inferentially contended by defendant that Dr. Frazier never had any personal knowledge of the conditions submitted to him in either of the hypothetical questions asked; that he had never examined or attended the children or seen the conditions existing from the overflow in the rear of plaintiffs' premises; and that therefore his evidence, in a manner, rested upon hearsay and was therefore based upon uncertainties and was incompetent. The rule is well established in this State that a medical expert may give his

opinion (1) based upon facts within his own personal knowledge and observation or (2) based upon an hypothetical question based wholly upon facts testified to by other witnesses or (3) based partly upon facts within his own personal knowledge and partly upon facts shown by the testimony of others. [De Donato v. Wells (Mo.), 41 S. W. (2d) 184; Patterson v. Springfield Traction Co., 178 Mo. App. 250, 259, 163 S. W. 955; Porter v. The Equitable Life Assur. Soc. (Mo. App.), 71 S. W. (2d) 766.]

We have sufficiently disposed of all assignments of error made upon this appeal by defendant. We find no prejudicial error in the record. The judgment of the trial court appealed from should be and is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.