Joseph L. REDDICK and Elizabeth E. Reddick, Appellants,

v.

Fleek A. PIPPIN and Lucille Pippin, Respondents.

No. 52781.

Supreme Court of Missouri, Division No. 2.

Nov. 13, 1967.

Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 11, 1967.

Joseph Langworthy, Pacific, for plaintiffs-appellants.

Thurman, Nixon, Smith & Howald, J. W. Thurman and James E. Bowles, Hillsboro, for defendants-respondents.

PRITCHARD, Commissioner.

Plaintiffs sued defendants for $20,000 actual and $20,000 punitive damages for alleged continuous discharge of a large quantity of raw sewage containing detergents and other deleterious and noxious substances from their land onto the adjacent land of plaintiffs, polluting a brook and a residential well. Trial was to the court which granted judgment for defendants.

Defendants own a rectangular piece of property fronting on the north on Miller Road and on the east on Highway 61 and 67. It is about 805 feet long north to south. The width is not shown. The whole tract is described as semicup shaped, with the high portions to the north and east and sloping down to the south or southwesterly. In the northeast corner is situated a motel, a restaurant, a filling station and a washhouse. To the west of the motel is a trailer court with a road access off of Miller Road. To the south is a driveway passing by the washhouse, and a house farther to the south. The Jim Kohler store is located southeasterly of the house.

Plaintiffs own a triangular shaped tract west of defendants' property, but with four lots each 209 feet deep, and totaling 393.8 feet in width fronting on Miller Road, in the northeast corner of plaintiffs' tract. These four lots are owned by D. Lubke, Beyers, A. Lubke and D. Wieland. On to the west is situated plaintiffs' house and their 305-foot deep well which they claim to have been polluted by defendants. The well was on the property when plaintiffs bought it in 1943, but it was redrilled 205 feet deeper the year following. The water was good until, according to Mr. Reddick, Mr. Pippin constructed the lagoon in 1960. A dam was constructed on the lowest part of defendants' property with diversion ditches uphill from the lagoon, which was about 150 feet by 150 feet in size. Through the dam, at its top, was placed an overflow or a discharge pipe, which first extended through plaintiffs' fence. Mr. Reddick took the pipe out so that it was about two to three feet from the fence. A pipe, eight inches in diameter or larger, was placed by defendants running from the motel, restaurant, filling station and trailers, down into the lagoon. A natural drainage ditch ran from the high, east portion of defendants' property down across plaintiffs' property. According to Mr. Reddick, water from the discharge pipe continuously seeps into the drainage ditch; there is also seepage underneath the dam which is placed on limestone. There was an artesian well on the east

boundary of the lagoon which formerly flowed into and down the ditch.

Mr. Reddick testified that there is an odor from the sewage, the lagoon and in the ditch, so strong that he cannot work there, and if the wind is from that direction he cannot sit in the yard at his house, 400 feet to the north of the lagoon. The water in the ditch or brook was clear before the lagoon was started, and since then the water has been foul. He has not been able to use the water from his well except for washing and toilets, and has had to haul water in plastic jugs. In Plaintiffs' Exhibit K, a photograph, is depicted some accumulated foam in the ditch. Mr. Reddick testified that this condition occurred more frequently in cool weather, but most of the time some of it can be seen. There was no foam on the water until the lagoon was started.

On cross-examination, Mr. Reddick testified that his well is 400 feet away from and 30 feet higher than the lagoon; that no surface water could get into the well from the ditch. His own septic tank is 20 feet in front of his house, draining toward the road on a terrace. Of his neighbors, two drain sewage to the front and two to the rear down the hill into septic tanks. These neighbors live above his well and their septic tanks are above his well.

Elizabeth Reddick testified that the water in their well was good up to the time construction of the lagoon was started. Afterwards, it "smelled" bad and "it'd kinda smart my tongue." She had not examined the ditch or brook because of a heart attack and an allergy condition. She was aware of an odor from the brook when she was outside, "a stale toilet like odor," sewage type. She did not know whether the odors she smelled came from the lagoon or her neighbors' septic tanks.

For defendants, Sanitary Engineer George J. Borgstede testified: He was employed by Mr. Pippin to draw the lagoon plans, which he did and submitted them to the Jefferson County Health Department which approved the prints and issued a construction permit. Borgstede determined what was going to be served by the lagoon—a beauty shop, a barber shop, a restaurant, a filling station, a 22-unit motel, and for fifteen mobile homes (which was more than then there and more than are there at present), a total of 115 persons for the one-third acre lagoon, although there were not that many people using it. The construction was done according to his plans and specifications. "The lagoon is working as one would desire. It's working properly." It is an efficiently operated lagoon, with a diversion ditch around it to take care of upper surface water. Bacterial action takes place to change the raw sewage from an unsatisfactory condition to a satisfactory condition which would be permissible to be flowing down a stream from the standpoint of Sanitary Engineering Health Department Standards. The water which is discharged from this particular lagoon is free of odors. Borgstede inspected it the day before trial. There has to be an overflow through the pipe during normal operation, from six inches under the surface of the lagoon. When the water in the lagoon has a green color it is working properly, but when it turns gray it becomes septic and has an offensive odor.

Oscar Feger, a Sanitary Engineer of the Jefferson County Health Department for 10 years, is familiar with defendants' lagoon. He approved Borgstede's plans, made a survey of the site and "okayed" it. An inspection was made by the Water Pollution Board in Jefferson City which issued an operating permit. Feger has seen the place from time to time since its construction, the last time the day before trial. The lagoon is definitely operating in an efficient manner in accordance with the requirements of the Jefferson County Health Department. There was absolutely no odor to it; it was not unsightly; it had a good green color; and as far as Feger was concerned the operation was "100 per cent perfect."

Bill R. Crockett, a Field Engineer for the Missouri Water Pollution Board, has duties

of inspection of newly constructed sewage facilities, including lagoons. It was his opinion that defendants' lagoon appeared to be receiving adequate maintenance and operation, and was of adequate size to treat the waste from the establishments. He made a dissolved oxygen test of the water and found it to be higher than he expected, and it was normal. The water acid or alkaline test was also good. So far as his department is concerned, the lagoon is in satisfactory working condition at the present time.

■ Plaintiffs first say that the court erred in refusing to admit into evidence the sample of water, Plaintiffs' Exhibit C, taken from the lagoon, and in refusing to permit testimony about it. The issue was whether defendants polluted or discharged raw sewage onto plaintiffs' premises. Counsel for plaintiffs stated to the court that Mr. Reddick erroneously took the sample from the lagoon rather than from the ditch on plaintiffs' property. Obviously, the water *in the lagoon* could have no relevance to this issue, and although plaintiffs argue that it was relevant to the issue of odors, obnoxious gases, emanating from the lagoon, the offer of the sample was not made for the purpose of proving up the latter issue as the transcript shows. The fact that the water in the lagoon itself would be polluted in no way tends to show that the water discharged therefrom is polluted. The trial court did not err in refusing this evidence.

Plaintiffs claim that the court erred in unduly limiting cross-examination of defendants' witnesses. The transcript shows that at no time was there any limitation of cross-examination except where there existed repetition with respect to whether the bacterial action within the lagoon killed all the "bad" bacteria and the "good" bacteria. The transcript shows that the witnesses fully and clearly went into these matters when asked, as well as whether there was compliance with standards for the operation of the lagoon. Point II, raising this issue, is overruled.

■ The evidence does not support plaintiffs' claim that defendants constructed the lagoon in wanton and reckless disregard of plaintiffs' rights; that it was inadequate for sewage dumped into it and did not prevent the discharge and overflow of sewage from defendants' land to plaintiffs' land. Plaintiffs did not present any evidence at all that the placing of the lagoon and its operation were malicious acts, "the intentional doing of a wrongful act without just cause or excuse." Ackmann v. Keeney-Toelle Real Estate Company, Mo., 401 S.W. 2d 483, 489. Of course, as defendants point out, the construction was intentional, but it does not follow that there was an intentional improper construction so as to amount to malice. Plaintiffs presented no evidence that the lagoon was inadequate for sewage dumped into it, or that it did not prevent the discharge and overflow of sewage from defendants' land onto plaintiffs' land. The evidence as to the adequacy of the lagoon came from defendants' witnesses, and is overwhelming that the same was constructed and operated properly to the extent that 95 to 98 percent of harmful bacteria was removed before water was discharged. As to odors emanating from the lagoon, plaintiffs' oral testimony that they could detect them at their house, some 800 feet north, was for the court. The conclusion that there were no foul odors is justified by defendants' contrary evidence on the point, and further that plaintiffs' other neighbors, within 150 feet, discharged sewage much closer into septic tanks.

The evidence shows that the depression on plaintiffs' land, extending upwards onto defendants' land, a ditch or brook (by reason of the artesian well draining or seeping into it), is a natural drain for the area. Diversion ditches were constructed around the lagoon for natural surface waters which enter plaintiffs' land in the same place as before. Plaintiffs have not

adduced proof that the water of this ditch or brook is polluted so as to be unusable. The evidence from defendants is that the waters of a properly operating lagoon, as this was, may be discharged into any waters in this state, and that a properly operating lagoon would remove from 95 to 98 percent of the bacteria in the sewage before discharge from the top 6 inches of the surface of the lagoon.

 There is no direct, convincing evidence that the lagoon polluted plaintiffs' well. Their conclusion was that it did, but there is no evidence that any pollution in the well came from the lagoon 30 feet below and 800 feet to the south. It is just as reasonable to conclude that such well pollution came from plaintiffs' uphill neighbors' septic tanks. There was no comparison of chemical analyses of water from the lagoon and that from the well as might tend to show the source. Plaintiffs' well pollution, if any, could come from either one of two sources, and they have failed to prove a source of their alleged injury for which defendants would be liable.

Although plaintiffs' cited cases do hold that it is an actionable nuisance for one to collect waters, including sewage, upon his land and discharge it through artificial channels upon the lands of another, Paddock v. Somes, 102 Mo. 226, 14 S.W. 746; Kelly v. Kansas City Building & Loan Ass'n, 229 Mo.App. 686, 81 S.W.2d 440 (where the septic tank pollution was definitely proved); Clark v. City of Springfield, Mo.App., 241 S.W.2d 100 (where inadequacy of a sewer was proved); and Blydenburgh v. Amelung, Mo.App., 309 S.W.2d 150, yet those cases are inapplicable. Plaintiffs have not proved that sewage was deposited upon their lands from defendants' lagoon. The allegation of creation and maintenance of a nuisance in this respect is unsupported by proof; as to the existence of odors, that issue turns upon the trial court's judgment of credibility of witnesses.

The judgment is not manifestly for the wrong party, and it is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, P. J., and EAGER and HOLMAN, JJ., concur.

DONNELLY, J., not sitting.